O'HALLORAN et al. v. AMERICAN SEA GREEN SLATE CO. et al.

(District Court, N. D. New York. August 22, 1913.)

MONOPOLIES (§ 12*) — COMBINATION OF PRODUCERS — RESTRAINT OF TRADE — "MONOPOLY."

Within Anti-Trust Act July 2, 1890, c. 647, § 1, 26 Stat. 209 (U. S. Comp. St. 1901, p. 3200), declaring illegal every combination in restraint of trade or commerce among the several states, is a combination by most of the previously independent producers of "Sea Green" slate, having a quality and demand peculiar to itself, whereby the power to determine the amount of its production by each, its prices, and the persons to and by whom sales shall be made, is placed in a central body, though it is more or less in competition with black slate, and though such power may not have been unduly exercised to raise prices.

[Ed. Note.—For other cases, see Monopolies, Cent. Dig. § 10; Dec. Dig. § 12.*

For other definitions, see Words and Phrases, vol. 5, pp. 4570-4574.]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Action by James O'Halloran and another, partners as O'Halloran & Jacobs, against the American Sea Green Slate Company and others, to recover damages, to be trebled under the provisions of the statute, for an alleged violation of the provisions of the act of Congress approved July 2, 1890, entitled "An act to protect trade and commerce against unlawful restraints and monopolies." Decision for plaintiffs.

Randall J. Le Bœuf, of Albany, N. Y., and James G. Marks, of Pittsburgh, Pa., for plaintiffs.

Lewis E. Carr, of Albany, N. Y., S. E. Everts and J. B. McCormick, both of Granville, N. Y., and F. L. Taft, of Cleveland, Ohio, for defendants.

RAY, District Judge. Having in view the salient and controlling facts in this case, nearly all of which are undisputed, and the more recent decisions of the Supreme Court of the United States, I am forced to the conclusion that the defendants, except as mentioned in the findings, have violated the statute above referred to, the act of July 2, 1890, entitled "An act to protect trade and commerce against unlawful restraints and monopolies," to the damage of the plaintiffs, and that the plaintiffs have shown that they have sustained some damage, and that under the stipulation the court should proceed to take proof of such damages.

The defendants have filed many requests to find, which I do not pass upon, except as the findings made determine them, but reserve the right to pass on them before final judgment, and when the defendants shall have determined what additional facts they regard essential to have determined or passed upon specifically. The findings made and filed herewith, and made a part hereof, show, I think, that prior to August, 1904, the producing defendants were engaged in business in the production and sale of "sea green" slate in competition with each other and all other producers of "sea green" slate in the United States; the producing area of such slate being confined to a narrow strip of territory along the western boundary of the state of Vermont and near the eastern boundary of the state of New York. Slate of other colors and qualities were and are produced in Maine, Pennsylvania, and elsewhere, and, of course, there was more or less competition between these other slates and "sea green" slate; but the sea green had a limited area of production of its own, a limited number of actual producers, and a market and demand of its own. It was not difficult to form a combination by and through which, not only the production and output of "sea green slate" should be limited or enlarged or controlled at will, but by and through which the dealers therein could or should be limited in number, and the price of sea green slate fixed and determined by the combination. This was done by and through the formation of the American Sea Green Slate Company, a New York corporation, and the agreements and combination made between it and nearly all the producing companies, corporations, and individuals.

As these companies, corporations, and individuals had been doing an interstate business, the result was an interference with, a restraint upon, and a limitation of interstate commerce in sea green slate. Free competition between the producer and sellers in the production and sale of sea green slate as it had theretofore existed was destroyed, or substantially so, as nearly all producers came into the combination. As matter of fact production was controlled, as well as sales and prices were fixed, not entirely and completely, but substantially so, and interstate trade in sea green slate was in fact restricted and interfered with. It seems to me that when the producing defendants, theretofore engaged in producing and selling sea green slate and controlling substantially the entire production, agreed to form and did form this so-called selling corporation, the American Sea Green Slate Company, and placed in its hands the powers mentioned, and which were exercised, making themselves subject to its will and control in producing and selling, they "combined"; and when we find that the object of the combination was to control and at will restrict trade and commerce in sea green slate among the several states and control the price at which it should be sold, and the persons to whom sold, and the persons by whom it should be sold, it must be held that the combination was illegal, under the provisions of section 1 of the act referred to, which says:

"Every contract, combination in the form of trust or otherwise, or conspiracy in restraint of trade or commerce among the several states, or with foreign nations, is hereby declared to be illegal."

I acquit the defendants of any willful purpose or conscious design to violate this act; but this is no defense, if the agreements made and their execution necessarily operate to unduly and unreasonably restrain trade or commerce among the several states. See Addyston Pipe Case, 175 U. S. 211, 214, 234, 20 Sup. Ct. 96, 44 L. Ed. 136; Northern Securities Co. v. United States, 193 U. S. 197, 331, 24 Sup. Ct. 436, 48 L. Ed. 679. So far as the intent of the defendants is involved, they are presumed to have intended the necessary, natural, and known effects or consequences of their agreements and acts, and if these effects or consequences be to unduly restrain interstate trade and commerce, then the combination is illegal, and the participants are chargeable with the consequences, and are liable for the damages resulting. See also Continental Wall Paper Co. v. Voight, 212 U. S. 227, 29 Sup. Ct. 280, 53 L. Ed. 486, and Loewe v. Lawlor, 208 U. S. 274, 28 Sup. Ct. 301, 52 L. Ed. 488, 13 Ann. Cas. 815.

In United States v. Union Pacific R. R. Co. et al., 226 U. S. 61, 85, 33 Sup. Ct. 53, 57 (57 L. Ed. 124) the court said:

"We take it, therefore, that it may be regarded as settled, applying the statute as construed in the decisions of this court, that a combination which places railroads engaged in interstate commerce in such relation as to create a single dominating control in one corporation, whereby natural and existing competition in interstate commerce is unduly restricted or suppressed, is within the condemnation of the act. While the law may not be able to enforce competition, it can reach combinations which render competition impracticable."

See Swift & Co. v. United States, 196 U. S. 375, 25 Sup. Ct. 276, 49 L. Ed. 518.

In the case at bar we find a combination which places several producing and selling persons, corporations, and companies engaged in interstate commerce in such a relation to each other as to create a single dominating control in one corporation, the American Sea Green Slate Company, whereby the natural and theretofore existing competition in producing and selling Sea Green slate in interstate commerce is unduly restricted. The contention for a long time made, and still continued by many, that any agreement which to any extent and in any degree whatever affects or restricts and limits interstate commerce is illegal, is not supported by the recent decisions of the Supreme Court, and it seems to be settled that there must be an undue restriction or restraint, the question of fact to be settled by the court applying the rule of reason. But the legality or illegality of a combination is not to be determined by weighing or balancing the benefits to the combining parties as against the injury to the public or public interests, or by weighing and balancing the possible benefits to the public interests as against the injury to such interests. So an honest intention on the part of the combining parties to benefit the general public, by cheapening the cost to the consumer of the article produced and sold, and giving him a better article, will not save from the condemnation of this statute a combination which restrains and restricts interstate trade and commerce in that article to any considerable degree, and places the power to control production and fix prices in the hands of a dominating corporation or of the combination itself. To so construe this act would make injurious effects on the general public, and not interference with and restrictions or restraints upon interstate commerce, the essence of the offending.

And it is equally true that an intent and purpose to aid the financially weak producer as against the strong, to some extent, as here, will not save the combination from the condemnation of the statute, if that be not the main and controlling purpose and result, but interference with and control of production and prices in interstate commerce be such purpose or the result. While those engaged in the production of an article and interstate commerce therein have the right in all lawful ways to protect and foster their industry, they are not permitted to go to the extent of combining to unreasonably fetter or restrict interstate commerce. It has been declared that agreements or combinations between dealers having for their *sole* purpose the destruction of competition and the fixing of prices are injurious to the public interest and void. They are not saved by the advantages which the participants expect to derive from the enhanced price to the consumer. This is but a polite way of declaring that combinations by dealers to loot the public for their own gain and benefit are illegal. Each and every individual or corporation engaged in the production or sale of an article may, of course, fix the terms on which he will sell, provided he violates no law in so doing, for here the door to honest competition is left wide open, so that the public may protect itself; but when all, or substantially all, producers and dealers com-

bine to fix prices and control sales, as well as production, the interests of the public are at once threatened, and necessarily injured.

Men may combine their money, their intelligence, and their industry or effort for their common good, and so corporations are permitted and copartnerships are lawful; but when those theretofore engaged independently in producing and selling an article combine their money, intelligence, and effort for the purpose of limiting the supply and controlling the price of such article, and destroying competition, and they interfere with interstate commerce, or their combination is such as in its operation and execution will bring about these results, they have become violators of the statute referred to, regardless of intent. The Supreme Court has declared that the act referred to—

"prohibits any combination whatever to secure action which necessarily obstructs the free flow of commerce between the states, or restricts in that regard the liberty of any individual to engage in business." Loewe v. Lawlor, 208 U. S. 274, 28 Sup. Ct. 301, 52 L. Ed. 488, 13 Ann. Cas. 815.

The power under and pursuant to the combination to do the prohibited things is what brands it (the combination) as illegal, not the actual exercise of that power, although when a plaintiff sues for damages he must, of course, show the combination, its operation, and that it has resulted in damages to him. And of course, to bring a combination of this character within the condemnation of the statute, it is not necessary to show that a complete and United States wide monopoly has been actually created, or that the entire trade or business and production of an article has been brought within the control of the combination, or ever will be. It is no defense for such a combination to show that there is still some competition and some competitors, and that the acts of the combination do not wholly and entirely control interstate commerce in the article, or absolutely fetter it. If the combination be one in restraint of trade or commerce among the several states to any substantial degree, it is within the condemnation of the statute.

The defendants, except Sheldon Slate Company, which came in later, and one other, had negotiations which led up to the organization of the American Sea Green Slate Company, the purpose of which is stated in the findings, where the articles of incorporation are also set out. The defendants contend in effect that the competition between them was very injurious and well-nigh ruinous. It was understood and agreed that each of the producing companies, corporations, and individuals should sell the whole of his or its production of sea green slate to this selling corporation, when formed. And it was the purpose that this selling corporation should fix the price of all the slate produced by those who went into the arrangement, whether actually turned over to it or not. It is not a case where the producers in the combination independently fixed their own prices for the same quality of slate at their own free will, or retained the power to fix and control the price to purchasers and consumers, and they were not even left free to fix and determine their own productions. If they did exercise these powers, it was at their peril. In the selling corporation formed, each producer had a representative, and contracts were

executed and renewed by which they transferred to such corporation, not only their stock on hand, but all to be produced by them, and that in any manner thereafter acquired. It was also a part of the combination agreement that the stock of the corporation could only be sold to others after it had been offered to and refused by this corporation itself. All their slate from 1904 down to the trial was transferred to this selling corporation. There was a contract made and signed by the president of the corporation, and this resulted in the Cayahoga Roofing Company, an exclusive selling agency for certain territory, and representatives of all the producing companies signed the contract. A resolution was passed by this corporation forbidding the producers to move slate except on its written order, and the destination of the slate and the consignee must be given also.

Here are some of the things which this joint action of the defendants accomplished: By the exclusive ownership of their product the American Sea Green Slate Company had power, which it exercised, aside from price making, to restrain or destroy at will the competition in interstate commerce which had theretofore existed between them. It determined the persons to whom the slate produced by them should be sold, the classification of such persons, and authorized the entire exclusion of any of such persons. It also determined the quarries from which the producers' slate should be sold, and whether any should be sold, or whether it should be stored to serve the purposes of those in the combination; the terms and conditions of sale; and the piling and loading, etc., as directed by certain inspectors. There are many others which I will not recite. This combination centered its powers in this selling corporation, transferred to it all its slate, that of each producer, gave it control of prices, sale, shipment, and actually forbade the producers to move slate on their own account, except on conditions fixed by it. It is true that on certain conditions producers were permitted to repurchase and sell; but they were not free to sell or ship in interstate commerce the slate so repurchased, as the terms and conditions were prescribed by this selling corporation.

The learned attorney for the American Sea Green Slate Company ably contends that:

"There is a distinction between combination and agreements that were entered into with the legitimate purpose of reasonably forwarding personal interest and developing trade, and those that give rise to the inference or presumption they had been entered into with intent to do wrong to the general public."

There should be added to this quotation:

"And to limit the right of individuals, thus restraining the free flow of commerce, and tending to bring about the evils, such as enhancement of prices, which were considered to be against public policy."

The learned counsel says the first class mentioned are legal, the latter class illegal, and—

"what was done was to better producing conditions, to so aid producers they could successfully continue and increase their operations, without unduly or unreasonably increasing the cost to the consumer. What was so intended has been accomplished, the producers have been benefited, but that expense has not been at the expense of the consuming public."

He also argues that in point of fact, since the organization of this selling corporation, the output and sale of sea green slate has increased, and that the case is devoid of evidence tending to show that the free flow of interstate commerce has been at all interfered with.

I think a combination or an agreement is within the condemnation of the act which places the power in the hands of a controlling or selling company to fix the prices to consumers and dealers of the commodity produced by those in the combination, and who had theretofore been competitors, and to sell or not to sell at all such production, and also fix or determine the class or classes of persons who shall be permitted to purchase and sell or deal in such commodity. The exercise of such a power would clearly interfere with and restrict the "free flow of interstate commerce." The article, as here, sea green slate, over 60 per cent. being in the hands of this selling corporation, could be for an indefinite period entirely, to that extent, withdrawn from the channels of trade. The supply to dealers and consumers in one or more sections of the country may be cut off or greatly limited. Is it a defense to those in such a combination to say that, true, we restrict and interfere with interstate commerce between New York and Boston and Providence and Portland; but we have largely increased such commerce in this article between New York and Cleveland and Chicago and Omaha and San Francisco, and, altogether, we have increased the interstate shipments of this article fourfold; true, we cut off South Carolina, Georgia, and Florida, and the South altogether, but we sell the entire product, which we have largely increased, in Ohio, Michigan, and the great West, and have thereby increased interstate trade and commerce in this article fourfold? I do not so understand the law.

It is also contended that no harm has been done by way of increasing the price of sea green slate to the consumer, inasmuch as the evidence discloses that such increases of price as have been made do not meet or more than meet the increased cost of production. Also:

"Sea green slate is in competition in the markets with black slate, the production of the Pennsylvania region. The production there largely exceeds that of sea green. The prices of the sea green to the producers are limited to the prices of the black slate in the contracts previously referred to. The prices of the sea green to consumers are necessarily limited to and regulated by those of the black slate, which so largely predominates in the markets. So it is not in the power of the Sea Green Slate Company to impose upon consumers any unreasonable burden in the way of price."

But, aside from the question of damages, if any, suffered by the plaintiffs, is it of consequence, in determining the illegality of this combination, whether or not the increase in price actually made was to meet the increased cost of production or to satisfy the alleged greed of those in the combination? Is a combination of this class any the less illegal for the reason it has not put in actual practice or operation the powers it has conferred upon itself by the joint action of its members? It is unquestionably true that sea green slate has met and meets and will meet in competition black slate from Pennsylvania and Maine and other places, and also a variety of other roofing materials, and that such competition will more or less affect and have to do with determining the price at which the sea green slate must be

sold. This may have to do with the question of damages; but as it appears that sea green slate has a quality and a demand peculiar to itself, I am unable to see that the supply of black slate has much, if anything, to do with determining the legality or illegality of this combination. Is trade or commerce in *this* article among the several states restrained unreasonably, or may or will it be so restrained, by the operations of this combination is the crucial inquiry.

Section 7 of the act provides:

"Any person who shall be injured in his business or property by any other person or corporation, by reason of anything forbidden or declared to be unlawful by this act, may sue therefor in any Circuit Court of the United States in the district in which the defendant resides or is found, without respect to the amount in controversy, and shall recover threefold the damages by him sustained, and the costs of suit, including a reasonable attorney's fee."

It is quite true that before these plaintiffs can recover it must appear that:

"The acts of the defendant complained of must be forbidden by or be unlawful under the act, and (2) the plaintiffs must have been injured in their business by such forbidden or unlawful act."

I am now, under the stipulation, to pass on the illegality of the combination only, and whether or not the plaintiffs sustain such a relation to its acts as make a prima facie case of injury to some extent, even though it be nominal merely. The plaintiffs were and are large dealers in slate of various kinds, and in sea green slate, with others. Since the formation of this combination they have been compelled to pay more for this slate, they claim, and have been placed under restrictions not before in existence, and denied slate, they claim, because of this combination and its illegal character. The question of damages was not gone into, and I express no opinion, as I have none, whether or not the plaintiffs in fact have been substantially injured in their business or property by the acts of the defendants or either of them. The evidence is sufficient to show a prima facie case for some damage.

As I cannot hold this combination to be one not in violation of section 1 of the act, and feel compelled to hold it is one condemned by the act, the parties will proceed to present their proofs on the question of damages. As before stated, inasmuch as no judgment can be entered until this question of damages is settled, I reserve the right to pass on defendants' requests, as well as additional requests of the plaintiffs, if any, at the time of final decision. It is useless to lumber a case with a mass of unnecessary and immaterial findings; but defendants should have the privilege of presenting requests in view of the findings already made.

So ordered.