# CASES

## ARGUED AND DETERMINED

#### IN THE

# UNITED STATES CIRCUIT COURTS OF APPEALS AND THE DISTRICT COURTS

---

### BLUEFIELDS S. S. CO., Limited, v. UNITED FRUIT CO.

#### (Circuit Court of Appeals, Third Circuit. June 26, 1917.)

#### No. 2196.

**1. JUDGMENT ⬤958(1)—RULINGS AND EVIDENCE AS TO RES JUDICATA.**

In an action under Sherman Act July 2, 1890, c. 647, 26 Stat. 209, to recover damages for injuries alleged to have been sustained in consequence of conduct therein declared unlawful, plaintiff, being desirous of proving its case by introducing the findings of a master in an action against the same defendant, heard and decided in another district, petitioned for a preliminary hearing upon the question whether such findings were admissible. The court, having before it the full record of the prior case and only so much of the record of the instant case as had been made by the pleadings, stated that it would rule that such of the findings and conclusions of the prior case as were material and essential were res judicata, in so far as they were relevant to the issues in the instant case. *Held* that, having discovered on trial that some of the findings which it originally deemed material were not material, it was proper for the court to reject them, having reserved that question by the ruling; this being particularly true as plaintiffs, anticipating the possibility of such action, proceeded to prove such matters by the testimony of witnesses introduced at trial.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 1827–1829.]

**2. JUDGMENT ⬤542—CONCLUSIVENESS—"RES JUDICATA."**

The doctrine of "res judicata" means simply that a cause of action, once finally determined, without appeal, between the parties, on the merits, by a competent tribunal, cannot be litigated by a new proceeding, either before the same or any other tribunal.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 987.

For other definitions, see Words and Phrases, First and Second Series, Res Judicata.]

**3. JUDGMENT ⬤624—RES JUDICATA—ESSENTIALS.**

One of the essentials of res judicata is identity of the parties to the actions.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 1139.]

**4. JUDGMENT ⬤704—CONCLUSIVENESS—RES JUDICATA—PERSONS CONCLUDED.**

A stockholder of plaintiff company, on his own behalf as well as on behalf of all other stockholders who might chose to intervene, sued defendant, joining the plaintiff corporation and others, on the ground that plaintiff had exercised an unlawful control over defendant. The suit was determined in favor of the stockholder, and the master made findings to

---

⬤For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

243 Fed.—1

the effect that plaintiff had been greatly damaged by defendant's control. In the original suit, both plaintiff and defendant made answer to the bill, denying its charges, but neither filed a cross-bill against the other. *Held*, that there was no issue raised or contested by the plaintiff or defendant; and, as they did not occupy adversary positions, the findings in such suit are not conclusive in an action by plaintiff against defendant to recover damages claimed to have been suffered on account of defendant's acts, asserted to have violated the Sherman Act.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 1229.]

5. JUDGMENT ☞715(2)—CONCLUSIVENESS—RES JUDICATA—IDENTITY OF ISSUES.

As in the original action the relief sought was an injunction against defendant on the ground that it voted its stock in plaintiff company in violation of law and the appointment of a receiver, the matter in controversy was not identical with that in the subsequent suit, in which damages for violation of the Sherman Act were sought, and hence the findings in the original suit were not conclusive against defendant, for, had they been otherwise, plaintiff might nevertheless have subsequently maintained an action for damages.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 1245.]

6. JUDGMENT ☞624—CONCLUSIVENESS—RES JUDICATA.

No one can take advantage of a judgment or decree, if he would not have been prejudiced by it, had it been otherwise.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 1139.]

7. APPEAL AND ERROR ☞1050(1)—REVIEW—HARMLESS ERROR.

In plaintiff's action under the Sherman Act for damages for violation thereof, plaintiff, asserting that findings in a previous case to which defendant was a party were conclusive, presented that question before trial, and the court erroneously ruled that such findings were conclusive, although, when the case was actually presented, it rejected some of the findings as not being material. *Held*, that the erroneous admission of part of the findings was not prejudicial to plaintiff, relieving it of the burden of proving those facts.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1068, 1069, 4153, 4157.]

8. APPEAL AND ERROR ☞1071(1)—REVIEW—HARMLESS ERROR.

In such case, as plaintiff did not wholly rely on the findings, but offered the testimony of witnesses to establish the facts therein found, the act of the court in changing its position and rejecting some of the findings was not prejudicial.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4234.]

9. MONOPOLIES ☞21—ACTIONS FOR DAMAGES—DEFENSES.

Where the plaintiff company allowed defendant to secure the control of its stock, and participated in the arrangement whereby defendant assumed control, plaintiff cannot, in a suit under the Sherman Act for damages alleged to have been sustained in consequence of conduct declared unlawful, recover, where it participated in and acquiesced in the unlawful conduct; the fact that plaintiff did not reap the benefits expected giving it no cause of action, and the usual rule that in torts the elements of intent to inflict injury and acquiescence in wrongs done do not enter, having no application, any more than the usual rule that in an action under the Sherman Act parties are presumed to have intended the probable consequences of their illegal agreements.

[Ed. Note.—For other cases, see Monopolies, Cent. Dig. § 15.]

10. MONOPOLIES ☞28—ACTIONS—EVIDENCE—SUFFICIENCY.

In an action under the Sherman Act for damages for injuries alleged to have been sustained in consequence of conduct declared unlawful, evi-

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

dence *held* to warrant a finding that plaintiff participated in the unlawful combination in restraint of trade and consented to defendant's acquiring a controlling interest in its stock.

[Ed. Note.—For other cases, see Monopolies, Cent. Dig. § 18.]

11. MONOPOLIES ⬙21—CRIMINAL ENTERPRISES—RIGHT TO RELIEF.

Where a criminal combination is made or a criminal enterprise is undertaken by two parties, and either party violates the agreement with injury to the other, the law will give the injured party no redress, but leave him in the condition it found him.

[Ed. Note.—For other cases, see Monopolies, Cent. Dig. § 15.]

12. MONOPOLIES ⬙21—STOCKHOLDERS OF CORPORATIONS—POWER OF.

Where all of the stockholders of a corporation joined in forming an unlawful combination with another corporation, and acquiesced for a long term of years in the part their company played, accepting and enjoying benefits springing from such corporation, the corporation itself is bound by their acts, and cannot subsequently assert a cause of action on the ground such acts were violations of the Sherman Act; this being true, though new and innocent parties subsequently acquired some of the corporate stock.

[Ed. Note.—For other cases, see Monopolies, Cent. Dig. § 15.]

13. APPEAL AND ERROR ⬙1001(1)—REVIEW—VERDICT—EFFECT.

The verdict of the jury on questions of fact, supported by evidence, is conclusive on appeal.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3928-3933.]

14. LIMITATION OF ACTIONS ⬙2(3)—WHAT LAW GOVERNS.

In an action under the Sherman Act, the statute of limitations where the action is brought governs.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. § 7.]

15. LIMITATION OF ACTIONS ⬙55(1)—WHAT LAW GOVERNS.

Where plaintiff and its stockholders acquiesced in defendant's acquiring stock control and consented to the illegal combination, if any, making no attempt to sue plaintiff before the suit was instituted, the cause of action, which was based on the Sherman Act, must be deemed to have arisen at the time the damage occurred, there being no showing that defendant prevented a prior suit, and hence the limitation statute of Pennsylvania (Purdon's Dig. Pa. [13th Ed.] p. 2282), in which district the action was begun, was properly treated as beginning to run at the time the damage occurred.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. § 299.]

16. APPEAL AND ERROR ⬙1071(2)—REVIEW—HARMLESS ERROR.

In an action under the Sherman Act, begun in the district for Pennsylvania, the six-year Pennsylvania statute of limitations (Purdon's Dig. Pa. [13th Ed.] p. 2282) was applied, instead of the one-year Louisiana statute (Civ. Code La. arts. 3536, 3537), which was the law of the place where the action accrued. Act Pa. June 26, 1895 (P. L. 375), declares that, when a cause of action has been fully barred by the laws of the state or country in which it arose, such bar shall be a complete defense to a suit brought within Pennsylvania. *Held*, that any error in applying the Pennsylvania limitation act, instead of the shorter Louisiana act, was not prejudicial to plaintiff.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4235.]

In Error to the District Court of the United States for the Eastern District of Pennsylvania; J. Whitaker Thompson, Judge.

⬙For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Action by the Bluefields Steamship Company, Limited, to the use of Elmer E. Wood, ancillary receiver, against the United Fruit Company. There was a judgment for defendant, and plaintiff brings error. Affirmed.

Robert W. Childs and John S. Hummer, both of Chicago, Ill., William L. Hughes, of New Orleans, La., and Thomas F. Gain, Francis Shunk Brown, and Alexander Simpson, Jr., all of Philadelphia, Pa., for plaintiff in error.

George Wharton Pepper, of Philadelphia, Pa., and Moorfield Storey and Robert G. Dodge, both of Boston, Mass., for defendant in error.

Before BUFFINGTON, McPHERSON, and WOOLLEY, Circuit Judges.

WOOLLEY, Circuit Judge. This is an action brought under the seventh section of the Sherman Act (Act of July 2, 1890, c. 647, 26 Stat. 209) to recover damages for injuries alleged to have been sustained in consequence of conduct thereby forbidden and declared unlawful.

The plaintiff's case may be briefly stated as follows: Before October 14, 1899, the parties to this action were active competitors in importing bananas into the United States and selling them in interstate commerce. On that date, the defendant, for the purpose of destroying competition and monopolizing the importation of bananas and controlling their distribution and price in the several states, purchased from various stockholders of the plaintiff one-half of its capital stock, and procured the voting power of one additional share.

By force of the control thus obtained, the defendant dominated the affairs of the plaintiff, elected its officers, and through them directed its policy in a manner that unreasonably restrained trade and created in itself a monopoly in the banana business contrary to law.

To attain this end the defendant, acting through officers of its selection, compelled the plaintiff to enter into contracts with the Fruit Dispatch Company, a corporate subsidiary of the defendant, whereby the plaintiff was required to distribute all its fruit in the manner and dispose of it at prices determined by that company, and by various acts greatly reduced the acreage and increased the cost of banana planting upon the plaintiff's plantations, sold its fruit at greatly reduced prices compared with what would have been obtained if the fruit had not been sold through the Dispatch Company, curtailed importations, increased operating expenses, wasted money in unnecessary competition, leased certain of its properties for inadequate rents to irresponsible tenants, neglected and abandoned other properties, and permitted deterioration of its shipping facilities and equipment. From all these things, the plaintiff claimed to have suffered actual damage to the amount of five million dollars, to be trebled by the provision of the Sherman Act. Stated generally, the plaintiff's principal claim of damage was the loss of profits which it would have

made if it had been allowed to continue its business in competition with the defendant.

For defense the defendant offered evidence tending to prove that no injury had been inflicted upon the plaintiff by anything it had done or had permitted to be done, but, that, on the contrary, its control had been to the plaintiff's financial advantage; that if it inflicted any injury upon the plaintiff it was done without intent to injure; and that the conduct of its control and its management of the plaintiff's properties and the marketing of its product through the channels employed were pursued according to the terms and within the spirit of contracts sought by all the plaintiff's stockholders and entered into between the defendant and all the plaintiff's stockholders (save one), in which contracts the plaintiff corporation actively participated and all its stockholders (including this one) freely acquiesced through a long period of years, so that, the defendant maintained, if its conduct be found to offend the provisions of the Sherman Act, then the plaintiff was in pari delicto and was without right to recover. The defendant further pleaded the statute of limitations.

The jury rendered a verdict for the defendant; on the judgment entered, the plaintiff sued out this writ of error.

This trial, covering a period of forty-five days, produced a record of unusual length. Eighty-four errors are assigned. While some of the assignments bear upon separate and unrelated matters, it has been possible, with the assistance of counsel, to so group the most of them, that the substantial questions may be considered and determined upon broad principles of law.

Before we approach the trial and follow its trend, we shall dispose of a number of assignments of error arising out of certain action which the court took before trial.

[1] In addition to testimony from witnesses to be produced at the trial, the plaintiff proposed to prove its case by introducing the findings of a master in the case of Steele v. United Fruit Company et al., heard and decided in the Circuit Court of the United States for the Eastern District of Louisiana (190 Fed. 631) and affirmed by the Circuit Court of Appeals for the Fifth Circuit (194 Fed. 1023, 114 C. C. A. 666).

That was an action against the United Fruit Company and others, instituted by a stockholder of the plaintiff, and concerned the defendant's stock control over the plaintiff. The findings recited in detail the manner of its acquisition and exercise. The plaintiff conceived that many of the facts upon which the decree in that case was based would sustain a judgment in this case, and therefore their submission and determination in that case constituted res judicata in this case. If that were so, then manifestly the plaintiff would have the great advantage of being relieved of the necessity of proving here what had there been judicially determined, and the defendant would have the corresponding disadvantage of being concluded thereby. So in order to ascertain before trial what the court would decide at trial as to whether and to what extent the findings in the Steele Case were res judicata of the issues in this case, the plain-

tiff petitioned the court for a preliminary hearing upon those questions. Upon granting the petition and stipulation by counsel as to questions submitted and exceptions reserved, the court, in a commendable effort to facilitate the litigation, attempted the doubtful expedient of declaring before trial what would be its decision at trial upon the offer of the master's findings as res judicata.

Having before it the full record of the Steele Case and only so much of the record of this case as had then been made by the pleadings, the trial court heard argument and stated in advance the rulings which it would make at the trial.

To the first question—whether or not the findings and conclusions in the case of Steele v. United Fruit Company in the District Court for Louisiana are res judicata as to any of the issues in this case—the court stated it would rule that:

"Such of the findings and conclusions in the Steele Case as are material and essential as a basis for the decrees therein are res judicata in so far as they are material and relevant to the determination of the issues in this case."

To the next question—to what extent are the findings and conclusions in the Steele suit res judicata—the court announced that they would be held to be "res judicata only in so far as they are evidence—

"1. To show domination and control of the Bluefields Company by the United Fruit Company up to the time of the commencement of the Steele suit;
"2. To show intent to dominate and control;
"3. To show intent through domination and control to injure the business or property of the Bluefields Company in restraint of interstate or foreign trade or commerce.
"4. To show that, through such domination and control, injury was done resulting in damage to the business or property of the Bluefields Company within the period of the applicable statute of limitations.
"They are not res judicata as to the extent of damages suffered by the Bluefields Company, because the extent of damages was not in issue in the Steele Case."

The court then passed upon and designated the particular findings and conclusions of the special master (being thirty-four in number) which were within its ruling. When the case came on for trial and the record grew from pleadings of parties to testimony of witnesses, the court, acting within what appears to be a deliberately made saving clause in its advance statement, refused to hold as res judicata some of the findings it had previously designated as such, because found immaterial and irrelevant to the issues in this case as they had developed. The plaintiff therefore claims, under appropriate assignments, that the court erred greatly to its prejudice: (1) By refusing to admit as res judicata certain findings and by striking out others; (2) in admitting evidence offered by the defendant tending to contradict matters concluded by the findings; and (3) in neutralizing or devitalizing certain other findings, duly admitted, by charging the jury in a manner inconsistent with their proper application.

We think no criticism should be directed to the trial judge for his change of attitude at trial, for to determine before trial, merely from examination of pleadings and before the case has broadened into tes-

timony, whether matters in a case previously tried are material and relevant to a case yet to be tried, is a judicial task rather difficult of accurate performance. Apparently alive to this, the judge wisely saved himself in his advance ruling by deciding generally that the matters in the Steele Case were res judicata in this case only in so far as they proved material or relevant to the issues in this case. The effect of that ruling was to defer to trial final decision on questions of materiality. Upon discovering that some of the findings which he had thought would be relevant were not relevant, the trial judge very properly refused to admit certain of them, struck out certain others after admitting them, and in his charge explained or limited others. We are of opinion that in stating in advance of trial that findings in the Steele Case would be ruled res judicata in this case according to their materiality and relevancy in this case, the court did not foreclose to itself the right to rule at the trial upon their admissibility according as their materiality and relevancy developed in the progress of the trial, and therefore in ruling at the trial in a manner different from what it indicated before trial, the court did not err. Evidently anticipating the possibility of such action, counsel for the plaintiff very wisely did not rely for proof of their case upon the court's advance statement of what it would do, but proceeded to prove it by testimony of witnesses, though seeking, of course, to hold the tactical advantage of the court's advance rulings in an effort to lock their case by the concluding effect of res judicata.

But as the rulings when made at the trial were duly excepted to, the questions still remain whether the matters to which they related were res judicata. In order to determine these questions we must inquire into the Steele Case and ascertain what was that case, what were the issues raised and contested, the nature of the findings, the character of the relief sought and afforded, and what was there decided.

The Steele Case was begun by bill filed in the Circuit Court of the United States for the Eastern District of Louisiana, on December 3, 1909, by Frederick M. Steele (on his own behalf as well as on behalf of all other stockholders of the Bluefields Steamship Company, who chose to intervene) against United Fruit Company, Bluefields Steamship Company, Jacob Weinberger, Charles Weinberger, and certain other individuals, officers and stockholders of both companies. Adolph Segal, a stockholder, intervened, and Simon and Emanuel Steinhardt, co-defendants, filed cross-bills, all praying substantially for the same relief; the remaining parties answered. Issue being joined, the case was referred to a special master.

As the reference was made upon the pleadings, and the decree upon the findings, we must first inquire into the bill. The stating part of the bill recited acts and conduct of the Fruit Company in the unlawful acquisition and exercise of control over the Bluefields Company. Much of this conduct, stated at length and in detail, was pleaded we think rather as inducement or matter leading up to the matter particularly complained of and from which relief was sought. The matter complained of was: (1) That the Fruit Company controlled by stock ownership the Bluefields Company; (2) that its control was hidden by an assignment of its stock to the Weinbergers. The relief prayed for was

that it should be. enjoined from further exercising such control, the right to such relief being based upon the law of Louisiana, which forbids the ownership and voting of stock in one corporation by a competing corporation, and the control of one corporation by another. The Bluefields Company was a Louisiana corporation subject to Louisiana law. The specific relief asked was, that (1) "Jacob Weinberger and Charles Weinberger be decreed not to have any title * * * in the stock of the Bluefields Steamship Company assigned to them by the United Fruit Company (and in certain other shares assigned by William Adler) and that they and each of them be enjoined from voting * * * such stock at a meeting of the Bluefields Company to be held on December 13, 1909, or at any meeting of that company; (2) that the United Fruit Company be enjoined from attempting directly or indirectly or through or by the said Jacob Weinberger or Charles Weinberger * * * to vote any stock of the Bluefields Steamship Company or to control, interfere with, affect or influence the said Bluefields Steamship Company in any of its affairs or in the election of its directors and officers; (3) that the said United Fruit Company be enjoined from claiming any right or interest in the stock of the said Bluefields Steamship Company by reason of holding the same as collateral security; * * *" and (4) that the receiver for the Bluefields Company appointed pendente lite be continued, and its officers, agents, servants and attorneys be enjoined from interfering with its business during the receivership.

The master's findings of fact, being fifty-three in number, sustained not only the main allegations of the bill, that the Fruit Company had acquired stock control in the Bluefields Company and had exercised that control contrary to Louisiana law, upon which was based the complainant's right to the relief prayed and ultimately granted, but sustained in detail the allegations of acts and conduct of the Fruit Company, by which that control, made unlawful by the law of Louisiana, had been acquired and exercised (such findings of acts and conduct being the principal matters urged as res judicata of the issues of the case now before us).

Upon the master's findings the court entered its decree. By the decree the court (1) overruled exceptions to the master's report, (2) dissolved the preliminary injunction enjoining an election of officers and directors of the Bluefields Steamship Company, (3) directed an election of that company to be held by the master, (4) enjoined the Fruit Company and Charles and Jacob Weinberger from voting at that or any other election of the Bluefields Company the shares of the capital stock of that company assigned by the former to the latter, and (5). maintained the receiver in control of the property of the Bluefields Company.

Upon petition previously presented by the receiver representing that he believed "that the Bluefields Steamship Company, Limited, has a very large, well-founded and provable claim for damages against the United Fruit Company and that suit should be prosecuted on behalf of said Bluefields Steamship Company, Limited, and against the said United Fruit Company for recovery of such damages," and praying leave to intervene in a suit then brought or to be brought, or to insti-

tute a suit to that end in the District Court of the United States for the Eastern District of Pennsylvania, the court by decree (made before approval of the master's findings and before the final decree above referred to) authorized the receiver to so intervene or institute an action of his own "to recover for and on behalf of Bluefields Steamship Company, Limited, and against the Fruit Company on said claim such amount as might justly be owing, as prayed for in the petition."

We have recited at some length the offense charged and relief sought and granted in the Steele Case in order to disclose the controversy in that case, and show the matters to which the allegations of the bill were addressed, the inquiry and findings of the master were directed and the decree of the court extended.

The inquiry of the master followed the stating part of the bill, which covered a wide range and dealt with the relations of the two companies —the dominant conduct of the one and the servient conduct of the other—through the period of years they were in business association. As the District Judge (Louisiana) said in his opinion:

"The master endeavored to deal specifically with all the contentions of the parties and to find the facts with particularity, those collateral as well as those material to the main issue."

He further said:

"There appears to be evidence to sustain all of the master's findings of fact, though I have not examined with particularity those matters not bearing directly on the main issues before me."

The "main issues," clearly shown not only by the court's decree but by its accompanying opinion (the decree authorizing the receiver to bring this action having already been entered on his petition), were (1) whether the two corporations had been competing corporations, (2) whether one had acquired and exercised over the other a control forbidden by the laws of Louisiana, and (3) whether that control had ceased and terminated by the transfer of its shares to the Weinbergers. Some of the findings manifestly did not bear upon these main issues. Under no theory can they be res judicata in this action; while those which were material to the main issues are res judicata and concluding upon the defendant in this action only if the matters there determined and here upon trial were in controversy between the same parties and were identical.

[2] In considering these assignments we do not think it necessary to repeat or review the elaborate discussion in the briefs on the rule of res judicata. As to the reasons upon which the rule is founded and the principles by which it is controlled there is no dispute. We are concerned only with its application. The doctrine of res judicata is plain and intelligible, and, as stated in Foster v. The Richard Busteed, 100 Mass. 409, 412, 1 Am. Rep. 125, amounts simply to this, that a cause of action once finally determined, without appeal, between the parties, on the merits, by a competent tribunal, cannot afterwards be litigated by a new proceeding either before the same or any other tribunal.

[3, 4] It is an elementary conception of the doctrine that in order to make a matter res judicata there must be a concurrence of several

conditions (Bouvier's Law Dictionary, 2910), with but two of which we are here concerned. The first is: Identity of parties to the actions.

The adversary parties in this case were not (at least by alignment) adversary parties in the Steele Case. In that case, the controversy was between Steele and the Fruit Company. Other persons and corporations conceivably related to or affected by that controversy were made parties to the action in order that they might be reached by the decree. The Bluefields Company and the Fruit Company were co-defendants. As both were present as parties, the plaintiff here maintains that both are bound by the judgment. This contention is based principally upon what is unquestionably true, that in an action in equity the mere alignment of parties does not determine their position in the action, or affect the assertion of rights by or against them upon issues raised in which they are involved, or alter the force of the decree when it includes them. But the doctrine of res judicata, in requiring identity of parties, demands something more than their mere presence in the two actions howsoever aligned. It requires that they shall be parties to the issues raised, asserting or having an opportunity of asserting their rights, and declares that they shall be bound in so far and only in so far as the decisions embrace those issues and determine their rights. 16 Cyc. 196; 24 Am. & E. Cyc. (2d Ed.) 732, 753; Corcoran v. C. & O. Canal Co., 94 U. S. 741, 24 L. Ed. 190; Snell v. Campbell (C. C.) 24 Fed. 884; South Covington, etc., Ry. Co. v. Gest (C. C.) 34 Fed. 628; Stearns v. Lawrence, 83 Fed. 738, 28 C. C. A. 66; Montgomery v. McDermott (C. C.) 99 Fed. 502; Harmon v. Auditor, 123 Ill. 122, 13 N. E. 161, 5 Am. St. Rep. 502; Mitchell v. Banks, 180 U. S. 471, 480, 21 Sup. Ct. 418, 45 L. Ed. 627.

The parties to the Steele Case were Steele, and a certain intervener, as plaintiffs, and United Fruit Company, sundry persons, and finally Bluefields Steamship Company, as defendants. The objects of the suit, as indicated by the prayer of the bill, were to enjoin the Fruit Company from voting its stock in the Bluefields Company at an election of that company, and to secure the appointment of a receiver for the Bluefields Company (not then so stated but obviously for the purpose of bringing the action we are now reviewing). The charges of wrongdoing were directed against the Fruit Company, developing a situation which, if true, justified an injunction against the Fruit Company and the appointment of a receiver for the Bluefields Company. Upon the issue between Steele and the Fruit Company as to an unlawful stock control, the Bluefields Company was merely a nominal and passive party, while upon the issue between Steele and the Bluefields Company as to the expediency of the appointment of a receiver for the Bluefields Company, the Fruit Company was presently interested only as a stockholder, though prospectively interested as a party in another action. Both made answer directly to the bill. Both denied its charges. Neither filed a cross-bill against the other. There was thus no issue raised or contested between the two, a requisite to the doctrine of res judicata. 1 Van Fleet on Former Adjudication, § 256; Peters v. St. Louis, 226 Mo. 62, 125 S. W. 1134, 21 Ann. Cas. 1069. The finding that the Fruit Company held stock control of the

Bluefields Company hidden by an assignment to the Weinbergers, and therefore violative of the law of Louisiana, was a finding upon an issue which did not involve the Bluefields Company, as shown not only by the pleadings but by the obvious fact that if the finding had been the reverse, the Bluefields Company would not thereby have been concluded from maintaining this action against the Fruit Company for a violation of the Sherman law, had it thereafter chosen to bring it. It seems very clear that in the Steele Case there was raised, contested and adjudged no issue between the Bluefields Company and the Fruit Company. Therefore the two companies, adversary parties in this case, were not adversary parties in that case.

[5, 6] In order to invoke the doctrine of res judicata there must also be: Identity of the matter in controversy. This does not mean identity of form of action (Hopkins v. Lee, 6 Wheat, 109, 5 L. Ed. 518; Foster v. The Richard Busteed, supra), or of cause of action (Southern Pacific R. R. Co. v. United States, 168 U. S. 1, 48, 18 Sup. Ct. 18, 42 L. Ed. 355). It means identity of those matters upon which both actions may be maintained (Lawrence v. Vernon, 3 Sumn. 22, Fed. Cas. No. 8,146) and with reference to which the adjudications in both extend. From this has arisen the rule of the Supreme Court that:

"A right, question or fact, distinctly put in issue and directly determined by a court of competent jurisdiction, as a ground of recovery, cannot be disputed in a subsequent suit between the same parties or their privies; and even if the second suit is for a different cause of action, the right, question or fact once so determined must, as between the same parties or their privies, be taken as conclusively established, so long as the judgment in the first suit remains unmodified." Mitchell v. National Bank, 180 U. S. 471, 21 Sup. Ct. 418, 45 L. Ed. 627; Hopkins v. Lee, 6 Wheat. 109, 5 L. Ed. 218.

We must therefore inquire what "questions" and "facts" were "distinctly put in issue and directly determined * * * as a ground of recovery" in the former action, and what are the like matters in controversy in this one. We may do this by inquiring, what were the things sued for in the two actions? Bull v. Hopkins, 7 Johns. (N. Y.) 22; 5 M. & W. 109.

The things sued for in the Steele Case, as we have found it necessary to say several times, were (1) an injunction against the Fruit Company from voting its stock in the Bluefields Company in violation of the law of Louisiana, and (2) the appointment of a receiver for the Bluefields Company (with authority to bring this suit). The thing sued for in this case is damages for injuries arising out of a violation of a law of the United States. Both actions, we assume, may be maintained by proof of some of the same facts. Based upon these facts, the decree in the Steele Case was two-fold: (1) It was a judgment that the Fruit Company had violated a law of the state of Louisiana. It was not a judgment that the Fruit Company had violated a law of the United States. (2) It was a judgment that, in finding that the Fruit Company had violated a law of Louisiana, enough was shown that it had also violated a law of the United States, with consequent injury to the Bluefields Company, to justify the appointment of a receiver for that company and his authorization to institute suit for damages against the Fruit Company. The judgment, in so far as it affected

the Bluefields Company, was that, upon the facts shown, the issue of the Fruit Company's guilt in violating a law of the United States should be tried in another action. The court did not prejudge that issue by predetermining the facts. It did no more than determine that the facts before it prima facie showed ground for the action and were sufficient to appeal to its discretion and induce it to appoint a receiver with authority to bring the action and try out the issue.

If, instead of adjudging the master's finding sufficient to justify the appointment of a receiver for the Bluefields Company with authority to bring this action against the Fruit Company for a violation of the Sherman Act, the court had adjudged the findings insufficient and had thereupon dismissed Steele's bill, surely that adjudication would not have been a judgment that the Fruit Company had not violated the Sherman Act, nor would it have made the findings upon which it was based res judicata pleadable by the Fruit Company in an action by the Bluefields Company for a violation of the act, nor would it have concluded the Bluefields Company from bringing such an action. This is upon the principle that no one can take advantage of a judgment or decree if he would not have been prejudiced by it if it had been otherwise. Chandler's Appeal, 100 Pa. 262, 265; Chantangco v. Abaroa, 218 U. S. 476, 481, 31 Sup. Ct. 34, 54 L. Ed. 1116; Bigelow v. Old Dominion Copper Co., 225 U. S. 111, 127, 32 Sup. Ct. 641, 56 L. Ed. 1009, Ann. Cas. 1913E, 875; Penfield v. Potts, 126 Fed. 476, 479, 61 C. C. A. 371.

As between the Bluefields Company and the Fruit Company there is not even a remote resemblance between the things sought and recoverable in the two actions, nor is there as to them a resemblance between the controversies in the two actions. We are therefore impressed that the difference in the adversary parties, in the matters in controversy and in the relief sought and matters decided in the two cases makes the evidence in the first wholly inadmissible as res judicata of the issues in the second.

[7, 8] While we thus decide that the trial court erred in ruling certain findings of the master res judicata of the issues in this case, we are of opinion that the plaintiff cannot complain of that error. The findings admitted were not prejudicial to it. On the contrary, they must have been immensely beneficial to it, for the thirty or more findings admitted as res judicata served the plaintiff with their binding and concluding effect as though of matters already adjudged, and correspondingly concluded and limited the defense. Nor do we feel that the plaintiff was prejudiced by the rulings of the court excluding the remaining findings, for it is very clear that its counsel, anticipating or fearing such rulings, did not rely upon them but proceeded to prove their case by the testimony of witnesses.

We therefore dismiss as without merit all assignments of error relating to questions of res judicata.

There are two groups of assignments charging error to the court in certain rulings upon evidence and instructions upon the law. These rulings and instructions, appearing repeatedly in one form or another throughout the trial, disclose what the court conceived to be the under-

lying and fundamental principles of the case and show very clearly the theory upon which the case was tried and decided. If the court was wrong in its conception of these principles, then obviously it committed many substantial errors. If, on the contrary, it was right, then its errors, if any, are likely to be few and without prejudice. We may therefore dispose of these assignments by considering the principles they broadly raise as affecting the whole trial.

[9] It should be kept in mind that this is an action under section 7 of the Sherman Act to recover damages for injuries sustained in consequence of violations of section 1 of the act (which makes illegal "every contract, combination * * * in restraint of trade or commerce * * * ") and of section 2 (which provides punishment for "every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several states, or with foreign countries * * * "). The plaintiff charged the defendant with such combination in restraint of trade and such monopolization of trade, and in support of its charge produced a great mass of testimony. The testimony disclosed a novel feature, which distinguished this case from the usual case where a combination or monopoly injures an independent competitor. In sustaining its averment that the defendant was an unlawful combination in restraint of trade and was an unlawful monopoly, the plaintiff showed that it was itself a party to that combination and a part of that monopoly. It soon appeared that the evidence was quite sufficient for the jury to find that the plaintiff itself participated in, acquiesced in and ratified the acts of which it here complains and for which it seeks damages by this action.

In this aspect of the case the learned trial judge discovered very early in the trial that much of the law announced by courts in actions brought under the Sherman Act by independent competitors for injuries inflicted by unlawful combinations was not applicable to this case. Instead of having, as in such cases, two clear issues, one as to whether the defendant was an unlawful combination and the other as to the fact of injury done and damages sustained, there arose in this case (1) the controlling question whether the plaintiff had not itself violated the Sherman Act, together with the defendant, in forming an unlawful combination which did the acts complained of, this question being dependent upon other questions (2) as to the manner in which that combination was formed; (3) its nature and the extent of control over the plaintiff intended thereby to be conferred upon the defendant; (4) the manner of its exercise, whether within or without the scope of the combination, and (5) not only whether injury was inflicted, but (6) if inflicted, whether it was the natural and probable consequence of the combination as formed, or extended beyond it, and was committed with intent to injure and destroy the plaintiff.

Issues of acquiescence and intent arose at once from the very nature of the acquisition of control and its exercise, for if the things complained of were things agreed to or acquiesced in, then manifestly if they were unlawful, the plaintiff was in pari delicto and was without right to recover. If, on the contrary, they were things not agreed to

or acquiesced in, then with equal certainty the defendant could not. escape liability for wrongs done and injury inflicted without the connivance or the concurrence of the plaintiff.

The court therefore consistently ruled and finally charged that in all these acts there entered the elements of the plaintiff's acquiescence and of the defendant's intent to injure. Of this the plaintiff now earnestly complains, contending that the acts which occasioned the injury were torts. and that in torts the elements of intent to inflict injury and of acquiescence in the wrongs done do not enter. Ross v. Pines, Wythe (Va.) 69; Nagy v. Press Co., 16 Manitoba, 616; Stephenson v. Brown, 147 Pa. 300, 23 Atl. 443; McCloskey v. Powell, 123 Pa. 62, 16 Atl. 420, 10 Am. St. Rep. 512.

Taken in the abstract and without reference to the facts of the case, that is the law. When in this class of torts unlawful combinations or unlawful agreements necessarily operate to unduly restrain trade and inflict injury, questions of willful purpose or conscious design to violate the law and inflict injury have no place. Addyston Pipe Case, 175 U. S. 211, 214, 234, 20 Sup. Ct. 96, 44 L. Ed. 136; Northern Securities Co. v. United States, 193 U. S. 197, 331, 24 Sup. Ct. 436, 48 L. Ed. 679. The courts have held that so far as intent is involved (that is, intent either to violate the law or thereby to inflict injury) persons so combining or contracting.are presumed to have intended the necessary, natural and probable consequences of their acts and agreements, and if their effect is to unduly restrain interstate trade with consequent injury, then the combination is illegal and the participants are chargeable with the consequences and are liable for the damages resulting. Continental Wall Paper Co. v. Voight, 212 U. S. 227, 29 Sup. Ct. 280, 53 L. Ed. 486; Loewe v. Lawlor, 208 U. S. 274, 28 Sup. Ct. 301, 52 L. Ed. 488, 13 Ann. Cas. 815; O'Halloran v. American Sea Green Slate Co. (D. C.) 207 Fed. 187, 189. There in no question about this law when the damages inflicted by an unlawful combination fall upon one not involved in the combination and not participating in violating the law. But here there was evidence that the plaintiff, acting through all its stockholders, had .combined with the defendant to restrain trade and commerce and to build up a monopoly between them. In prescribing the zone for banana cultivation and in limiting the purchase price and regulating the importation of bananas into the United States, the parties unquestionably effected thereby a combination which in some. degree restrained trade and measurably created a monopoly. If that combination unlawfully restrained trade and created an unlawful monopoly, as averred by the plaintiff, then certainly when the plaintiff complains of injury done by the defendant, the question arises ex necessitate rei whether the injury complained of was the natural and the probable consequence of the combination or was in consequence of conduct pursued beyond its scope with intent to inflict injury not within the agreement of the parties.

The plaintiff's claim was in effect that it did not reap all the profits which the combination should have yielded because of the manner in which the defendant exercised its control and conducted the plaintiff's business. The plaintiff's business was intended to be conducted by the

defendant along lines of restraint of trade and monopoly, in the course of which injury might follow as a natural effect, or might be occasioned by intentional and malevolent acts of the defendant. In this state of the case, the origin and purpose of the injury became questions for the jury.

It is impracticable to rehearse even briefly the testimony of the case, but the theory upon which the court tried the case and submitted it to the jury runs through its most elaborate and carefully delivered charge and is disclosed by a few excerpts.[1]

[1] As to the plaintiff's action the court said: "The plaintiff's case is based on an unlawful combination and unlawful contracts." This unlawful combination is the one made by stockholders of the plaintiff with the defendant, and the unlawful contracts are the two made between stockholders of the plaintiff and the defendant, and one made between the plaintiff and the defendant. Upon the subject of the defendant's unlawful acquisition of control and its intent to injure the plaintiff, the court said:

"In other words, to put it briefly, the plaintiff's claim is based on injury through the destruction of competition, which is alleged existed, and which ought to have existed, between it and the defendant, and the injuries are based or the damages for injuries are based on the losses which the plaintiff claims were caused by the destruction of that competition.

"All of these averments in the statement of claim set up unlawful acts, and the question then arises as to whether the plaintiff was a party to those unlawful acts. While the law prohibits unreasonable restraint of trade, it does not permit parties to take an unreasonable position with regard to acts in restraint of trade, and where two parties are equally guilty of a violation of the provisions of the Sherman Act, it does not permit one of the guilty parties to recover from the other. The policy of the law is that as between two wrongdoers, who are jointly responsible for the conditions of which one party complains, the law leaves them in the position in which it finds them, and the courts will not interfere to protect one wrongdoer against the other.

"I am outlining this at the outstart so that you may bear these principles in mind when you come to consider the evidence as to the circumstances under which the alleged unlawful combination was formed, the alleged unlawful contract was entered into, and the alleged unlawful use that was made of the control, which it is claimed the defendant exercised over the plaintiff.

"If, under all the evidence, you find that the defendant did obtain a control of the plaintiff, and used that control in the restraint of interstate commerce, with the view of monopolization of the banana business in interstate trade and commerce, and did various unlawful acts which the plaintiff alleges it did, and did these things without the acquiescence or consent of the plaintiff, with the intent to injure the plaintiff, then it would be your duty to return a verdict in favor of the plaintiff for the amount of damages which it has suffered by reason of the injurious acts.

"If, however, you find that there were such unlawful acts, and there was such an unlawful combination, and the plaintiff through the unanimous consent of its stockholders, joined in forming the unlawful combination, joined in entering into the alleged unlawful contracts, and acquiesced in the use of alleged unlawful control, then the plaintiff cannot recover in this case, and it would be your duty to return a verdict for the defendant. And if you should find that there was an unlawful combination, an unlawful control, an unlawful use of the control, and you should fail to find that the plaintiff was injured thereby, even though the control was exercised, without consent, then your verdict should be for the defendant because the plaintiff cannot recover in this case unless it was injured.  *   *   *

"If from all the evidence you find that at that time it was the purpose, not only of the United Fruit Company, but also the Bluefields Steamship Company, through its direction, and with the unanimous consent of its stockholders, to make that combination, to destroy competition, or the arrangement by which

We must inquire whether the facts of the case justify these instructions upon the law. The facts have been established by the verdict. They are vast in number and cover a wide range. While we have given consideration to all, we shall repeat only those which because

this competition was destroyed between the two parties, and the contract with the Fruit Dispatch Company were entered into under the same circumstances, then you would be justified, and I instruct you to find in that case that both parties were equally guilty of a violation of the Sherman Act, if either was.

"If the defendant was not guilty of a violation of the Sherman Act, it is not liable in this case. If by doing these acts with the consent of the plaintiff, it was guilty of a violation of the Sherman Act, it follows that the plaintiff was equally guilty of a violation of the Sherman Act in forming a combination and entering into contracts in restraint of trade, and for the destruction of competition between these two companies."

Upon the subject of the defendant's unlawful exercise of control lawfully acquired over the plaintiff, and of its intent to injure, the court said:

"The further question arises whether in case the contracts were not intended at that time to be contracts in violation of the Sherman Act, the defendant thereafter made an unlawful use of the combination, that is to say, exercised its control to do injurious acts, which had the purpose of destroying competition in this combination, and the monopolization of the banana business in the defendant. As to those acts, if you find from the evidence that they were done with the acquiescence of the board of directors and stockholders, of the Bluefields Steamship Company, then the Bluefields Steamship Company would be in exactly the same position as to the use of that control that it would be in in the entering into of this combination and the contracts with the Fruit Dispatch Company at the outstart. So that in either of these cases it would be your duty to return a verdict for the defendant without going into any question as to whether or not the plaintiff was injured. If, on the other hand, you find from the evidence that the defendant compelled the plaintiff to enter into this Fruit Dispatch Company contract by reason of the stock control obtained without the unanimous consent of the stockholders, and that through the exercise of power through the Fruit Dispatch Company and through control obtained by the ownership of stock, that it alone had the purpose of restraint of trade, and a destruction of competition between the two, and that in the exercise of the control and in the carrying out of the purpose, it injured the plaintiff in its business, then it would be your duty to return a verdict in favor of the plaintiff. * * * "

"The plaintiff cannot recover if, prior to the acquisition by Steele of his shares in the Bluefields Steamship Company, all the stockholders had acquiesced in the control of the United Fruit Company and in the various things now complained of by the plaintiff.

"I instruct you that acquiescence by all of the stockholders of the plaintiff in the exercise of the voting power by the defendant upon the shares held by it had the same legal effect as original consent to the formation of the illegal combination, and for any acts or omissions while such acquiescence continued the plaintiff cannot maintain this action."

In addition to what is found in these excerpts upon the element of intent, the court repeatedly charged in different phraseology what it said in affirming a point:

"If you are not satisfied by preponderance of evidence that the defendant in this case intentionally injured the plaintiff, then I charge you that your verdict must be for the defendant."

And again:

"In case you find that intentional injury has been done the plaintiff company by the exercise of control by the defendant, I instruct you that the proper measure of damage in this case is the difference between what the plaintiff company actually earned during the continuance of the control of the defendant, and the sum which it would have earned if there had been no control and if the plaintiff and defendant had been strictly competitive."

of their importance and prominence constitute the main structure of the case.

[10] The defendant maintained that a verdict should be directed in its favor for the reason, inter alia, that all the stockholders of the Bluefields Company (1) participated in forming the combination, and (2) acquiesced in the things done by the defendant in the exercise of the control conferred by the combination. As the question of its right to a directed verdict is not raised by writ of error, we are concerned with the contention only as it now presents the question, whether the evidence, if properly admitted, sustains the verdict.

It appears that the Bluefields Steamship Company was a corporation engaged in the business of importing bananas into the United States. It was a small combination of one-time competing concerns having a rather close control of the banana business in Bluefields, Nicaragua. In June 1899, the United Fruit Company, a larger combination, engaged in the same business elsewhere in Central America, entered the Bluefields region in competition with the Bluefields Company. In August 1899, after two months' competition, the directors of the Bluefields Company sent a committee to New York or Boston for the purpose of coming to a trade understanding with the Fruit Company. The authority which the board of directors conferred upon the committee in its proposed dealings with the Fruit Company extended to the fixing of prices by a combination of fruit importers, the limitation of importations, the fixing of uniform freight and passenger rates, the regulation of prices at purchasing points, and division of territory. This committee was appointed upon the unanimous vote of the directors on motion made by one Simon Steinhardt, who figured conspicuously in the matters now in litigation. As a result of the negotiations three contracts were entered into on October 14 following. Of the three contracts signed on that date, one was between an officer of the Fruit Company acting for that company, and stockholders of the Bluefields Company, and was signed by the president of the Fruit Company and all stockholders of the Bluefields Company excepting Simon Steinhardt. After providing that the stockholders should not compete with the Bluefields Company in growing, importing or selling tropical fruit in Nicaragua, Honduras or New Orleans for ten years, the stockholders of the Bluefields Company agreed to sell five hundred shares or one-half of its capital stock to the Fruit Company. In pursuance of this undertaking, each shareholder of the Bluefields Company (excepting Simon Steinhardt) transferred one-half of his shares to a designated person for the Fruit Company. Simon Steinhardt did not sign the contract or assign one-half of his shares, it being testified that he stated he did not wish to sell his shares, but that, however, "one-half the joint holdings of him and Emanuel Steinhardt would be covered by the contract." Emanuel assigned all his shares, sixty-two and one-half, and Simon retained the same number, sixty-two and one-half. By the assignment of one-half its stock and an arrangement by which the voting power of an additional share was conveyed, the Fruit Company acquired stock control over the Bluefields Company.

The second contract was between the Fruit Company and stockholders of the Bluefields Company, similarly signed by the stockhold-

ers. Its purpose, as indicated by preamble, was "to obtain for the Bluefields Company an assurance that its business shall not be impaired by interference of the United Fruit Company," and to that end fixed the amount of fruit which each company might import into the United States from Nicaragua and which the Bluefields Company might import from Honduras, with further restrictions on imports "upon a proportionate basis mutually agreed upon" by five importing companies, and provided that the classification of fruits and the fixation of rates for freight and passengers should be by agreement of the two companies.

The third contract was between the Bluefields Company and Fruit Dispatch Company (a subsidiary of the Fruit Company), made the Dispatch Company the sole selling agent of the Bluefields Company, and provided for the fixing of prices. This agreement was unanimously ratified by the board of directors of the Bluefields Company at a meeting at which Simon Steinhardt was present, there being testimony that Steinhardt urged and with the others approved the whole arrangement including the contracts of October 14, 1899.

[11] We are of opinion that upon this testimony the jury might have found that the combination effected by the three contracts was an unlawful combination in restraint of trade; that in its formation the plaintiff company participated, and to the control thereby conferred upon the Fruit Company the Bluefields Company consented. Therefore the court's instructions upon the law as to the plaintiff's participation in the defendant's acquisition of control was, in our opinion, manifestly correct. If the Sherman Act was violated by the combination in which the Bluefields Company participated, and injury to that company was a natural consequence, then the case comes within the well settled principle that where a criminal combination is made or a criminal enterprise is undertaken by two parties and either party violates the agreement with injury to the other, the law will afford the injured party no redress but will leave him as it finds him. In pari delicto potior est conditio defendantis. Daniels v. Tearney, 102 U. S. 415, 26 L. Ed. 187; McMullen v. Hoffman, 174 U. S. 639, 19 Sup. Ct. 839, 43 L. Ed. 1117; Pittsburgh Dredging & Construction Co. v. Monongahela & Western Dredging Co. (C. C.) 139 Fed. 780; Chicago, M. & St. P. Ry. Co. v. Wabash, St. L. & T. Ry. Co., 61 Fed. 993, 9 C. C. A. 659; Bishop v. American Preserves Co. (C. C.) 105 Fed. 845; Continental Wall Paper Co. v. Voight, 212 U. S. 227, 262, 29 Sup. Ct. 280, 53 L. Ed. 486.

[12] So also were correct the court's rulings and instructions as to the plaintiff's acquiescence in the defendant's exercise of its control. If, upon evidence which we think abundantly sufficient, the jury found that all the stockholders of the Bluefields Company joined in forming the alleged unlawful combination and in placing their company in it; acquiesced for a long term of years in the part their company played in that combination and in the manner it played it or was caused to play it; and accepted and enjoyed the profits which sprang from it, we are of opinion that the corporation itself was bound by their acts and was precluded from asserting a right of action based upon them. Morawetz on Corporations, § 262; Wells v. Northern Trust Co., 195

Ill. 288, 63 N. E. 136; Hotel Co. v. Wade, 97 U. S. 13, 24 L. Ed. 917. The rights of its two new and innocent stockholders are not superior to the rights of the corporation. It is urged, however, that even if the corporation is precluded from maintaining an action for the benefit of its stockholders, the corporation might later repudiate their acts and recover for the benefit of its creditors. But there is in this case no question of creditors other than such as may always technically be present in cases in which corporate action is involved. The litigation had its rise on a stockholder's bill, and though now prosecuted by a receiver in an action at law, the rights involved are obviously those which exist between the corporation and its stockholders.

[13] The jury were next required to determine whether the defendant's control, if lawfully acquired, was lawfully exercised, and as one interpretation of the verdict may be that they found a lawful exercise, we must inquire whether there is evidence to sustain that finding. We lay aside any question as to whether the Sherman Act recognizes the lawful exercise of control unlawfully acquired as not raised by this writ of error, and restrict our inquiry to the question, as stated by the plaintiff, whether "by reason of said unlawful control and contracts and *by reason of the unlawful use of said control*" the defendant violated the Sherman Act and inflicted injuries for which recovery may be had. Assuming that the court was correct in its fundamental theory of the case arising out of the plaintiff's grant of control to the defendant and its acquiescence in the manner of its exercise, the question whether its exercise was lawful or unlawful is one purely of fact. This question was sharply controverted by a great mass of testimony as to conduct covering a period of ten years, from which it appears that the affairs of the Bluefields Company, as administered by the Fruit Company, prospered greatly or suffered much according as the testimony is read and believed. This testimony raised kindred questions, vigorously contested, as to whether the acts done and omitted by the Fruit Company in the administration of the affairs of the Bluefields Company were in pursuance merely of wrong business policy, in consequence of incompetent or indifferent managers, or in furtherance of a design on the part of the Fruit Company to injure the Bluefields Company; whether to the acts done or omitted the Bluefields Company gave its consent or made protest; and whether in consequence thereof any injury was inflicted.

It would add nothing to the discussion to repeat the evidence upon which these questions were submitted to the jury. The point for our consideration is whether they were properly submitted. As they were submitted on the theory of the law which we have found the trial court properly applied to the peculiar facts of this case, we find that they were determined by the verdict of the jury upon evidence which was sufficient to sustain it.

[14-16] The remaining question is what statute of limitations, if any, applied to the case. The plaintiff maintained that no statute of limitations was applicable, because no right of action accrued to the Bluefields Company so long as it was under the repressive control of the Fruit Company, and that until it got from under its control the statute did not begin to run against it. We are not persuaded to this

view, as we are inclined to agree with the trial judge that "there is no evidence in this case of any fact which prevents the running of the statute of limitations." The question therefore is (1) when did the statute of limitations begin to run, and (2) what statute was applicable? The statute began to run when the cause of action arose, and the cause of action arose when the damage occurred. Then action might have been brought. The plaintiff claimed that the damage began when the combination was created in 1899, and continued until the bringing of suit on June 23, 1911; hence any limitation upon the action was a matter of importance to the plaintiff. Recognizing that to an action under the Sherman Act the statute of limitations of the state where the action is brought, applies. (Chattanooga Foundry and Pipe Works v. Atlanta, 203 U. S. 390, 27 Sup. Ct. 65, 51 L. Ed. 241), the receiver for the Bluefields Company gave consideration to the question where to bring his action, and was induced by the liberality of the Pennsylvania Act (Purdon's Dig. [13th Ed.] p. 2282) to bring it in a district of Pennsylvania, as shown by his petition to the District Court for Louisiana, for leave to intervene or to bring suit in Pennsylvania, wherein he stated, that there were "strong and controlling reasons for prosecuting such suit * * * in the state of Pennsylvania instead of in this district (Louisiana), * * * one of such reasons * * * being that it will be claimed * * * that in Louisiana recovery can be had only for such damages as have accrued within one year from the date of bringing suit on account of the laws of prescriptions of limitations of actions, whereas he is advised that in said Eastern district of Pennsylvania, recovery may be had for damages accruing within six years." In bringing this action from Louisiana to Pennsylvania for the purpose of procuring the advantages of the statute of limitations of the latter state, the plaintiff was met by the Pennsylvania Act of June 26, 1895 (P. L. 375), and was confronted by one of its provisions, found in acts of limitations of many states, that:

"When a cause of action has been fully barred by the laws of the state or country in which it arose, such bar shall be a complete defense to an action thereon brought in any of the courts of this commonwealth."

It is a very close question whether that provision of the Pennsylvania Act did not throw the plaintiff back upon the statute of limitations of Louisiana as the place where the damage was done and the cause of action arose. Under the statute of that state, the limitation in actions in tort is one year. Civil Code, arts. 3536, 3537; Warner v. New Orleans and Carrollton R. R., 104 La. 536, 29 South. 226. The trial court however did not apply the Louisiana one year limitation by force of the recited provision of the Pennsylvania Act, but applied the six year limitation of the Pennsylvania Act. If the court's refusal to apply the one year Louisiana limitation by direction of the Pennsylvania statute was error, it was beneficial rather than prejudicial to the plaintiff and is no ground for reversal. The only question is whether the six year limitation of the Pennsylvania Act was properly applied. During the period in question the plaintiff was undoubtedly under the stock control of the defendant, which elected its officers and directed its affairs. Yet, until this suit was contemplated, we find no evidence

of an attempt or even of a desire by the plaintiff or by any of its stockholders to sue the defendant for the manner it exercised its control, or of any act or attempt by the defendant to hinder or prevent the institution of such a suit. The naked fact of control, unaccompanied by acts preventing or at least discouraging the bringing of an action, cannot suspend the running of a statute of limitations. We are of opinion that the defendant did not suffer from error in having applied to its case the six year limitation of the Pennsylvania Act.

After a full and painstaking consideration of the many errors assigned in this very considerable record, we are of opinion that the trial court committed no reversible error.

The judgment below is affirmed.