PETERS et al., Commissioners of South Market, Appellants, v. CITY OF ST. LOUIS, and GEORGE WEINBRENNER, City Marshal.

Division One, March 1, 1910.

1. MUNICIPAL CORPORATIONS: Limited Powers: Notice. A municipal corporation is but a public agency with limited rights and powers, and all persons dealing with it or accepting privileges from it must do so with notice and knowledge of those limitations. If it enact ordinances in excess of its delegated powers, they are void.

2. ———: Ultra Vires: Pleaded By City. The city can plead that its ordinances are *ultra vires* and void, because the real party is the general public, and not the derelict officials.

3. ———: ———: Establishing Market in Street. A city possessed with a power to control its streets, and also clothed with a power of establishing, controlling and regulating market places, cannot exercise such powers to the extent of appropriating a large portion of a street for a brick building to be used as a market place. Where land has been dedicated to public use as a street, it cannot be diverted from that use by ordinances authorizing the erection of a market place, 36 by 375 feet, in the middle of the street, to be built by funds voluntarily subscribed by individual stockholders, to whom the rents are to be distributed, and to be managed and controlled by three commissioners elected by the stockholders. Such ordinances do not burden the street with an additional public use, but they absolutely withdraw a material portion of it from a general public use.

4. ———: Nuisance: Res Adjudicata: Adversary Parties. Parties to a judgment are not bound by it, in a subsequent controversy between each other, unless they were adversary parties in that action. So that where the circuit attorney instituted a suit in the circuit court to have declared void ordinances authorizing the establishment by private persons of a large market place in the midst of a public street and to have it declared a nuisance, and made a great number of persons defendants, among others the city and the three commissioners of the market, and the city contented itself with a general denial, and other defendants filed an elaborate answer, and the bill was dismissed, the invalidity of the ordinances being thereby denied, the commissioners and the city were not adversary parties, and that suit was not *res adjudicata* on the question of the validity of the ordinance raised by this suit of injunction brought by the commissioners against the city and its executive officer to enjoin them from removing the market house.

5. ———: ———: Limitations. The statutes of limitations do not apply in a suit to remove a market house from a dedicated public street, where its commissioners claim under and by virtue of void ordinances authorizing the market place, and not otherwise.

Appeal from St. Louis City Circuit Court.—*Hon. O'Neill Ryan*, Judge.

AFFIRMED.

*Wm. E. Wise* and *Kehr & Fittmann* for appellants.

(1) The power to establish, erect and regulate markets is not a governmental power of the city, but belongs to it in its proprietary business capacity. (2) The power in question may be lawfully exercised through individuals or associations as agencies of the public. (3) Markets established by the city are public markets, although the cost of erection and the burden of management are borne by private individuals or associations, under arrangement with the city for reimbursement of capital outlay and expense of maintenance. (4) The appropriation of a portion of a street for a market, by virtue of an ordinance of the city, although subject to be complained of by the State, or by individuals specially injured, does not vitiate the grant of the market privilege by the city. The grant is nevertheless good against the city. (5) Whatever infirmities may inhere in this ordinance of 1839 when considered with regard to the rights of the State or the rights of property-holders thereby injuriously affected in a special way, the ordinance is nevertheless a complete contract between the city and the market association. The obligation of this contract is protected beyond impairment by any legislative or executive action by the city. (6) The city is estopped to proceed to destroy this market, as here undertaken: (a) By its own legislation. (b) By investments for the public benefit, in pursuance of that legislation. (c) By long-continued acquiescence and recognition of the market as a public market established and maintained by virtue of a municipal grant and charter. (d) By the opposition of the city to action of the State to abate the market as unlawful. (7) The State is itself barred by the Statute of Limitations to complain of this market as an improper occupation and use of the street. (8) The State is also barred of any action to complain of this market as an unlawful occupation of the street

by the judgment in the case of State ex rel. v. Fisse. This judgment is conclusive against the city of St. Louis. The title to the streets is in the State. The city as a subordinate political agency of the State cannot assert rights to or in streets superior to or exceeding the rights of the State itself. (9) This judgment is also conclusive against the city because it was procured and induced by the action of the city, as a party to the cause, affirming the validity of its own ordinances when assailed, and denying all title of its sovereign, subversive of its own ordinance.

*L. E. Walther* and *B. H. Charles* for respondents.

(1) Once a highway, always a highway. (2) A grant of power to a municipal corporation to establish markets and build market houses does not confer any authority to construct them on the public highways. 1 Dillon on Mun. Corps. (4 Ed.), sec. 383; Wartman v. Philadelphia, 33 Pa. St. 210; Harrisburg's Appeal, 19 Am. and Eng. Corp. Cas., 603; Mayor v. Wilson, 49 Ga. 476; State v. Mobile, 5 Porter (Ala.) 279. a. Neither the State, nor its agent, the city, can abdicate, nor change the character of, its trust over property in which the whole people are interested. Railroad v. Illinois, 146 U. S. 453; Reighorn v. Flinn, 189 Pa. 355; 1 Dillon on Mun. Corps. (4 Ed.), sec. 383, p. 457, and cases cited in note, quoted in Schopp v. St. Louis, 117 Mo. 135; Sugar Co. v. Elevator Co., 82 Mo. 121; Price v. Thompson, 48 Mo. 361; State ex rel. v. St. Louis, 161 Mo. 371; Berry-Horn v. Scruggs-McClure, 62 Mo. App. 93. b. The city had no power to devote the street to any use not consistent with its use as a highway, or different from the object of the original dedication. 1 Dillon on Mun. Corps. (4 Ed.), sec. 383; Sugar Co. v. Elevator Co., 82 Mo. 121; Williams v. Road Co., 21 Mo. 582; Glasgow v. St. Louis, 87 Mo. 678; Lockwood v. Railroad, 122 Mo. 86; Knapp v. Railroad, 126 Mo.

26; Sluder v. Transit Co., 189 Mo. 130; Richmond v. Smith, 148 Ind. 296; Pettit v. Grand Junction, 119 Ia. 358; Cowen v. New York, 113 N. Y. 532; Webb v. Demopolis, 95 Ala. 116; Pfau v. Reynolds, 53 Ill. 212; State v. Murphy, 134 Mo. 548; Savage v. Salem, 23 Ore. 381; 27 Am. and Eng. Ency. Law (2 Ed.), pp. 150, 151; McIlhinny v. Trenton, 128 Mich. 380; Patfield v. Strauss, 189 N. Y. 208, citing Glaessner v. Brew. Assn., 100 Mo. 508. c. Any building erected on a highway is a public nuisance. 1 Dillon on Mun. Corp. (4 Ed.), sec. 383, p. 477; Galloso v. Sikeston, 124 Mo. App. 380; Richmond v. Smith, 148 Ind. 296; Wartman v. Philadelphia, 33 Pa. St. 202; Harrisburg's Appeal, 19 Am. and Eng. Cor. Cas., 603; Mayor v. Wilson, 49 Ga. 476; McDonald v. Newark, 42 N. J. Eq. 138; State v. Lavarack, 34 N. J. L. 201; Smith v. McDonald, 148 Ill. 51; Barrows v. Sycamore, 150 Ill. 588; Pettit v. Grand Junction, 119 Ia. 358; 24 Am. and Eng. Ency. Law (1 Ed.), 47; McIllhinny v. Trenton, 148 Mich. 380. (3) Those who deal with a municipal corporation are presumed to know what its powers are, and must take knowledge of the limitations thereon. 20 Am. and Eng. Ency. Law (2 Ed.), p. 1142; McGrath v. St. Louis, 215 Mo. 207; Leathers v. Springfield, 65 Mo. 504; Cheeney v. Brookfield, 60 Mo. 54; Campbell v. St. Louis, 71 Mo. 106; McQuiddy v. Braddock, 70 Mo. App. 535; Brick Co. v. Hamilton, 51 Mo. App. 120; Campau v. Detroit, 106 Mich. 414; Electric Co. v. Boston, 163 Mass. 64; Dillon Mun. Corps., sec. 447. (4) Ordinances 399 and 3503 constituted no contract. At best, the plaintiffs' predecessors were permitted to take possession of the highway under a license revocable at will. Ferrenbach v. Turner, 86 Mo. 416. (5) Parties to a judgment are not bound by it in a subsequent controversy between each other, unless they were adversary parties in the original action. 1 Freeman on Judg. (4 Ed.), sec. 158, p. 289; McMahon v. Geiger, 73 Mo. 149; State Bank v. Bartle, 114 Mo. 276; Car-

mody v. Hanick, 85 Mo. App. 666; Springfield v. Plummer, 89 Mo. App. 529; O'Rourke v. Railroad, 142 Mo. 353; Van Fleet's Former Adjudication, sec. 256; Chand on Res Adjudicata, sec. 77. (6) The Statute of Limitations has no application to this case. (a) On the theory that the market was a public market: In State ex rel. v. Fisse, these plaintiffs alleged that the market was a public market under the city's supervision and that it was the public property of the city; there could not be any adverse possession on their own theory. (b) On the theory that the maintenance of the market by these stockholders was a private use: An individual cannot acquire a prescriptive right in a highway for any private use. 2 Dillon on Mun. Corps. (4 Ed.), pp. 801, 802; Milling Co. v. Reilly, 133 Mo. 574; Simpson v. Wabash, 145 Mo. 81.

GRAVES, J.—In the year 1839, by ordinance duly passed, the city of St. Louis authorized, or attempted to authorize, the erection, management and control of what is and was known as "South Market," a market place in Fifth street of said city. By the ordinance this market place was to be erected in what was then and is now recognized as a public street of the said city. The market house was to be built by funds voluntarily subscribed by individuals, in shares of not less than twenty-five dollars each. When erected by subscription, as aforesaid, section 1 of the ordinance provided: "Which building, when erected, shall be a public market for the sale of all kinds of marketing and produce which are or may be allowed to be sold in the market regulations of this city, which said market house shall be called and known by the name of the South Market."

By section 2, it was provided that the rents should be distributed among the stockholders until they should receive "the full amount by them expended in the erection, superintendence and management of the

same, with such sum or sums as they may be required to pay for any necessary repairs thereon, together with an interest of eight per cent per annum on the whole.''

This ordinance provided for three commissioners to manage and control the said market place, until the election of others, which election was provided for in the ordinance by an election held by the stockholders. These commissioners were by the ordinance made city officers, and the market place was to be run in conformity to the ordinances of the city. Reports were to be made to the city authorities. Section 6 of said ordinance reads:

''That upon the first annual report having been made to the board of aldermen as required by this ordinance, the city authorities, should they deem it expedient, may then or at any time thereafter, cause to be refunded to the commissioners whatever amount may be justly due to the stockholders of said market house, according to the provisions and meaning of this ordinance;

''Or, whenever the stockholders shall be fully refunded by the rents and profits of said market as provided by this ordinance, said commissioners shall relinquish, and the mayor and board of aldermen shall resume, for and in behalf of the city, the possession, ownership and government of said market house, for the benefit of the citizens.''

Later, in 1856 another ordinance was passed confirmatory of the one just described, and granting further privileges. In other words, more street space was granted, carrying with it additional privileges to the market place.

Under these ordinances money was subscribed and a market house was erected, thirty-six feet in width and 375 feet in length, containing about forty stalls or places of business. Upon either side of this house was about thirty feet of the street. In other words, the public highway at this point was nearly

one hundred feet in width, and the market place occupied thirty-six feet, practically in the middle thereof.

The present suit is one in equity, in which the present commissioners of said South Market seek to enjoin the city and its executive officer, the city marshal, from removing the house built as aforesaid. The ordinances above are pleaded, and the fact of the subscription to a fund for the purpose of building the market place is pleaded, and in addition it is charged that there are 331 shares of stock outstanding, upon which there is yet due twelve dollars per share, and an indebtedness of more than $4000 against said market place, contracted by the commissioners. Taking it altogether it would require some $8000 to liquidate the stock and debt of the concern. The defendants by their answer plead that there was no power in the city to pass the two ordinances aforesaid, as well as other defenses. The reply raises, among other issues, a plea of *res adjudicata*. We shall not at this point go into detail as to all the matters raised by answer or reply, but leave such matters to be noted as far as may be required in the course of the opinion.

From the evidence it appears that the market place has not done much business in recent years. At or about the date of trial, only two or three stalls were used for market purposes, and for some time prior thereto the greater portion of the building was being used for mere storage purposes. It also appears that the property was becoming more involved in debt as the years pass. Such is evident from the last reports made. This sufficiently outlines the case for a discussion of the questions of law raised.

I.  The questions in this case can be reduced to a minimum, notwithstanding the numerous pleas in the answer and reply. In the first place the validity of these two ordinances must be passed upon and determined. The question is, can a city, possessed with the power of controlling the streets, and also clothed with

the power of establishing, controlling and regulating market places, exercise such powers to the extent of appropriating a large portion of a street for a brick building, to be used for a market place? An answer to this query eliminates one question in this case. Those dealing with a municipal corporation of limited powers, must deal with a knowledge of such limitations. Municipal corporations are but public agencies with limited rights and powers, and as such must be so recognized by all parties dealing therewith. If such corporation go beyond its delegated powers, its acts are void. If it pass ordinances which go beyond such delegated powers, the ordinances are void and bind no one. The city, being a public agency, can and should plead that its acts were *ultra vires* and void, and bind no one. This, because the real party is the general public and not the officials who have been derelict in duty when the unlawful act was committed. By the two ordinances pleaded plaintiffs claim what rights, if any, they have. The pleadings cannot be read without the conclusion being reached that whatever rights plaintiffs claim, come from the two ordinances described *in extenso* in the statement. In the briefs, it is true, there is some suggestion of an adverse holding, and to this we will come later.

But to the proposition as to the right of the city to pass the two ordinances in question. If the city had such power there is an end to this controversy. It appears that other market places were established about this time and they too were placed in the public streets. This, however, does not change the legal status of all such ordinances and of all such acts. Such could only be considered as tending to show the city's construction of its own powers, and not further. To our mind the ordinances in question, as well as all similar ordinances, are void for the reason that they exceed the lawful powers of a municipal corporation, such as we have involved here. Where land has been

dedicated as a street and thereby dedicated to public use, the same cannot be diverted from that use in the manner indicated in these ordinances. Licenses may be granted to street railways, which, for a public purpose, will subject the use of the street to additional burdens, but the street itself and no portion thereof is absolutely withdrawn from use by the general public. Under such grants it has been subjected to an additional use. Not so with reference to the two ordinances in question. These ordinances absolutely withdraw from public use a material portion of a public highway. They do not merely encumber such highway with an additional public use, but absolutely withdraw the same from public use. This we say advisedly; for it is argued that the use to which the street was subjected under these ordinances is a public use. In a sense that is true. The market accommodated that portion of the population adjacent thereto, but not the general public. Public streets are for the general public and not for local interests. Licenses to railway corporations are tolerated on the theory that their limited use of the public thoroughfare is for the general public, but even such licenses cannot be tolerated when they operate in such a manner as to preclude the use of the streets in the usual and ordinary manner by the general public. [State ex rel. v. Railroad, 206 Mo. 251, and cases cited therein.]

Power to establish and control market places does not mean power to usurp the rights of the public in and to public streets. The case law seems to be firmly set this way. Dillon, with a citation of the case law (1 Dillon's Municipal Corporations [4 Ed.], sec. 383), says: "But power to a municipal corporation to establish markets and build market houses will not give the authority *to build them on a public street*. Such erections are nuisances though made by the corporation, because the street and the entire street, is for

the use of the whole people. They are nuisances when built upon the streets, although sufficient space be left for the passage of vehicles and persons. Such erections may, it seems, be legalized by an express act of the Legislature. But unless so legalized, a nuisance erected and maintained by a public corporation may be proceeded against, criminally or otherwise, the same as erected by private persons.''

In an early case, the Georgia court thus spoke, Mayor, etc., v. Wilson et al., 49 Ga. l. c. 478: ''It is insisted that the market house was only erected temporarily in that street whilst the defendant was pulling down the old and erecting a new permanent market house on the site appropriated for that permanent building. The reply is, that the organic law forbids the defendant from granting away the streets of the city, for any purpose whatsoever, without an act of the General Assembly. It is a question of power in the defendant as a municipal corporation. It has no more power under its organic law to grant away the use of the streets of the city for the erection of a temporary market house, or for any other purpose, than it would have to grant away the use of the streets permanently. It had no power to grant away the use of the street for *any purpose whatsoever,* so as to deprive the inhabitants of its common use.''

To a like effect is an early Pennsylvania case, Wartman et al. v. Philadelphia, 33 Pa. St. l. c. 210: ''But the general right to build market houses and to shift them from place to place, as occasion may require, does not imply a right to build them on the public highway. High street is a public highway, made so by the words of the Penn charter. The market houses built in the middle of it were a nuisance previous to the Act of 1804. Those who maintained them might have been indicted, and any citizen could have abated them. It required the supreme legislative authority of the State to take away from them

their criminal character. The members of the common council were mistaken when they voted, in 1773, that they were satisfied of their right to obstruct the middle of the street, if they left a proper space on each side for the passage of carriages. They could no more obstruct it partially, than close it altogether, and a nuisance erected and maintained by a public corporation in a highway dedicated to the use of the whole people, is as liable to legal punishment, as the same acts done by private parties.''

In a market place case, the Indiana court, City of Richmond et al. v. Smith, 148 Ind. l. c. 296, thus expresses itself: ''No good reason can be given to show that the judgment should not be affirmed. The streets are primarily for the use of the traveling public. Certain other uses in which the public and the abutting property-owners are interested are also allowed, but only in such manner and to such extent as may not appreciably impede the use for public travel. Such uses are those for sewers, gas and water pipes, also telegraph and telephone lines. Provision, too, is made for shade trees along the curb and between the roadway and the sidewalks. No right, however, as we think, could be exercised by a city for such an occupancy of a public street as that which was here attempted.''

The New Jersey court had to pass upon a case wherein the citizens sought to enjoin the use of a public street as a market place. [McDonald v. Newark, 42 N. J. Eq. l. c. 138.] That court therein said: ''In the case in hand, the use of the streets for a market place is, under the circumstances, a public nuisance. Such use of the highway is wholly unwarranted. The entire street is for the use of the public at large, and the unauthorized use of part of it for a market is a public nuisance. [State v. Laverack, 5 Vt. 201.] Nor does the grant by the officers of the city, of permission so to use the street, legalize such use. The use is not

only a public nuisance, but it is, so far as the complainant and others similarly affected are concerned, a private nuisance also.''

Many cases could be cited, but they all follow the trend of the original cases, and all are in harmony with the cases from this State, reviewed in State ex rel. v. Wabash Railroad, supra. A municipal corporation has no right to obstruct a public highway, by ordinance or otherwise, in the manner in which this highway is obstructed. What the city cannot do, it cannot by ordinance authorize individuals to do. The ordinances in this case upon which plaintiffs rely are void. They exceed the granted power of the city. Being *ultra vires* and void the city can urge its incapacity to grant the rights claimed by the plaintiffs unless for other reasons presently to be noted; in such course the city has been estopped. Summarizing the point now under discussion, the city exceeded its powers in attempting by these ordinances to grant to plaintiffs the privileges now claimed by them.

II. Whilst it appears that plaintiffs claim all their rights by and through the city, yet they say that by reason of the attitude of the city in a former suit the validity of these ordinances has been adjudicated and cannot now be questioned. It appears that some years prior to this action the circuit attorney of the city of St. Louis instituted an action in the circuit court of that city, the general purpose of which was to have the ordinance described in our statement declared void for want of power in the city to pass the same, and to have the market place in question declared a purpresture and nuisance. A great number of persons were made parties defendant to this action, including the three commissioners of the said market place, as well as the city of St. Louis. Other defendants filed an elaborate answer, but the city contented itself with a general denial. By the judgment, the

plaintiffs' bill was dismissed. By reason of this judgment, it is claimed that the city is estopped from now denying the validity of these ordinances. Plaintiffs say that the matter is *res adjudicata*. Defendant, the city of St. Louis, says that in such suit it was not an adversary party to the plaintiffs or their privies, and therefore there can be no *res adjudicata*. In this contention, we think the city is right. The most that was then done by the city was to deny the invalidity of its ordinances. In so doing it joined to that extent the answer of the other defendants in the case. It was not an adversary party to the present plaintiffs in that proceeding. As said by Freeman on Judgments (4 Ed.) vol. 1, sec. 158: ''Parties to a judgment are not bound by it, in a subsequent controversy between each other, unless they were adversary parties in the original action.'' This doctrine was quoted with approval by this court in McMahan v. Geiger, 73 Mo. l. c. 149. Following the same thought is Van Fleet's Former Adjudication, vol. 1, sec. 256, 'whereat the writer says: ''Unless the defendants contest an issue with each other, either upon the pleadings between them and the plaintiffs, or upon cross-pleadings between themselves, it will not be *res judicata* in a litigation between them. Of course, a judgment determining the rights of the defendants between themselves, under proper pleadings, is conclusive upon them. But a judgment against them, if there are no issues between them, does not bind them as against each other.''

In the case herein pleaded in bar there are no issues made or joined between the city and the plaintiffs in this case. They were upon the same side of the suit. In Chand upon the law of Res Judicata, sec. 77, it has been well said: ''It is a general principle, however, that a decision in a suit does not operate as *res judicata* against all the parties to the suit, but only against those between whom the matter adjudicated upon was in issue. . . . It is on the same

principle, that parties to a suit are held not to be bound by a decision in it, in a subsequent suit between them, unless they were at arms' length and on opposite sides in the former suit; and a decision in favor of a person is held to be not *res judicata* against other persons ranged on the same side with him in the former suit. An issue in fact is, as a general rule, open to determination although a finding thereon has been arrived at between the parties in a former suit in which they both were defendants. This is on the broad ground that a judgment in a suit for or against two or more persons ordinarily determines nothing as to their respective rights and liabilities as against each other.''

Considering the authorities there is no *res adjudicata* in this case. With this question eliminated, there is not much left in view of what we hold as to the force and effect of the two ordinances involved. Something is said as to the Statute of Limitations, but this does not, and cannot apply, for the reason that the plaintiffs throughout recognize that the building in question is one within a dedicated street. Plaintiffs claim under and through the city by reason of these ordinances and not otherwise. They have never asserted an independent right of possession and do not in the pleadings assert it now. From first to last their claim has been one under the grant made by these two ordinances. If the ordinances are void, as we think they are, and if the plea of *res adjudicata* is unavailing, the plaintiffs have no rights. The plea of *res adjudicata* is unavailing. With these questions passed upon, it is not necessary to go further. The judgment of the trial court which dismissed plaintiffs' bill should be and is affirmed. All concur.