HOGAN, APPELLANT, *v.* THRASHER, RESPONDENT.

(No. 5,575.)

(Submitted January 10, 1925. Decided February 7, 1925.)

[233 Pac. 607.]

*Real Property — Vendor and Purchaser — Ejectment — Specific Performance—Statute of Frauds—Part Performance—Estoppel by Judgment—Laches—Appurtenances—Water Rights.*

Real Property—Specific Performance—Statute of Frauds—"Fraud"—Definition.
1. Fraud as the foundation of the doctrine of part performance of a parol agreement sufficient to take the case out of the statute of frauds does not mean actual fraud in the sense of conscious deceit but rather in the sense of unjust or unconscionable conduct which works a detriment for which courts of law are unable to afford an adequate remedy.

Same—Exchange of Land for Land—Status of Parties.
2. Where land is exchanged for land, each of the parties occupies the dual role of vendor and vendee.

---

1. Acts which may constitute part performance of contract within statute of frauds, see note in 53 **Am. Dec.** 539.
2. Difference between exchange of property and sale, see note in 94 **Am. St. Rep.** 227.

Laches—What Constitutes.

    3. Mere delay of itself is not laches, but to constitute laches the delay must have worked injury to him who relies upon it.

Real Property—Vendee in Possession—Specific Performance—Laches.

    4. A vendee in possession of land under a parol agreement to convey cannot be barred from obtaining specific performance by mere delay, however long, in bringing suit, where defendant was not injured by the delay or induced to alter his position to his prejudice.

Equity—Findings—Evidence—Sufficiency—Rule.

    5. Where the findings upon the vital issues in an equity case are sufficiently supported by the evidence to warrant the decree entered, it will be sustained, the question being not whether every finding is sustained, but whether there is any correct finding to warrant the decree.

Real Property—Specific Performance—Statute of Frauds—Vendee in Possession—Making Valuable Improvements—Part Performance.

    6. A parol agreement for the sale or exchange of real property may be specifically enforced in case of part performance, and where the vendee takes possession and makes valuable improvements, there is a sufficient part performance to take the case out of the statute of frauds.

Same.

    7. For possession by the vendee to constitute part performance of a parol agreement to sell or exchange land, such possession must be in pursuance of the agreement and not merely a continuance of a former possession; but where possession is followed by the making of valuable and permanent improvements, it is referable to the new relation created by the contract, rather than the old one.

Same—Specific Performance—Compensation in Damages Insufficient.

    8. Under section 8717, Revised Codes, it is presumed that the breach of an agreement to sell or exchange land cannot be adequately compensated in damages, and where the court on ample evidence found that plaintiff in his action for specific performance could not be made whole by damages, the contention that specific performance should not have been decreed has no merit.

Same—Exchange of Land—Mutuality of Contract—What Sufficient.

    9. Where a party seeking specific performance of an agreement for an exchange of land tendered a deed and offered to do equity, the remedy became mutual; the fact that when the agreement was made the element of mutuality may have been absent, then becoming immaterial.

Estoppel by Judgment—How Established.

    10. The burden of establishing the plea of estoppel by judgment is upon him who alleges it, and in support of it the judgment

---

    3. Enforcement of stale claims in equity, see note in **Ann. Cas.** 1914B, 314.

    8. Contract for exchange of lands as specifically enforceable, see note in **Ann. Cas.** 1918D, 717.

    9. What constitutes, and necessity of, mutuality of remedy in specific performance, see note in 7 **Am. St. Rep.** 173.

    10. Burden of proof of *res judicata* or estoppel by judgment, see note in 2 **Ann. Cas.** 655.

    Proof that matter is *res judicata,* see note in 44 **Am. St. Rep.** 562.

itself must be produced, introduction of the findings, which do not constitute the judgment, being insufficient for that purpose.

Same—Essential.

11. A judgment cannot be relied upon as *res adjudicata* unless the parties to the action in which rendered were adversary parties; hence where plaintiff and defendant were codefendants in a prior action, represented by the same counsel, the judgment therein was not available to one of them in aid of his plea of estoppel.

Specific Performance Decree—Sufficiency.

12. Where the party seeking specific performance of an oral agreement to exchange land had deposited a deed in court, and the decree provided that defendant should convey and receive in return the deed so deposited, the fact that it did not expressly declare that plaintiff should perform the agreement did not render it insufficient.

Same—Appurtenances to Land—Water Rights Pass With Deed for Land.

13. Since appurtenances to land pass by deed for the land without being specially mentioned, and a water right is an appurtenance, a decree, in an action for specific performance of a land contract wherein appurtenances were not mentioned, requiring the losing party to convey "with the appurtenances" was not objectionable as beyond the issues.

*Appeal from District Court, Powell County; Geo. B. Winston, Judge.*

Suit by David Hogan against Antwine Thrasher. From a decree for defendant plaintiff appeals. Remanded, with directions to modify, and affirmed, as modified.

*Mr. W. H. Mahoney* and *Mr. C. S. Wagner,* for Appellant, submitted a brief; *Mr. Wagner* argued the cause orally.

*Messrs. Keeley & Keeley,* for Respondent, submitted a brief; *Mr. W. E. Keeley* argued the cause orally.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

In 1902 Antwine Thrasher leased from the state of Montana the east half of the northeast quarter and the east half of the

11. Judgment as *res judicata* between codefendants or coplaintiffs as to matters which were, or might have been, adjudicated, see note in 27 L. R. A. (n. s.) 650.

13. Form of conveyance which may be decreed in action to enforce contract to convey land, see note in Ann. Cas. 1915C, 489.

[72 Mont. 318.]

southwest quarter of section 36, township 10 north, range 11 west, and about the same time purchased from George Bergman some improvements and secured an assignment from Bergman of his lease from the state for the southeast quarter of the same section. Thrasher also went into the possession of lots 2 and 3 of section 31, township 10 north, range 10 west, then public land of the United States. David Hogan and George Anthony had theretofore inclosed a portion of lots 2 and 3, and Hogan had cultivated fifteen or twenty acres of the land. In 1904 Thrasher entered into a contract with the state to purchase the southeast quarter of section 36 and about the same time the United States conveyed lots 2 and 3 to the Northern Pacific Railway Company as a part of its land grant. In 1908 Thrasher contracted with the state to purchase the east half of the northeast quarter and the east half of the southwest quarter of section 36, and during the same year Hogan purchased lots 2 and 3 from the railway company. In December, 1918, Thrasher completed payment for the southeast quarter of section 36 and received a patent from the state, and, in December, 1919, he completed payment for the east half of the northeast quarter and the east half of the southwest quarter of section 36, and a patent therefor was issued by the state to his wife, Kate Thrasher. From 1900, or earlier, Hogan was in possession of a triangular piece of land lying in the northeast quarter of the southwest quarter and the northwest quarter of the southeast quarter of section 36—land included in Thrasher's contracts—and later conveyed to him and his wife by the patents from the state. Throughout the record this triangular piece is referred to as the "irregular tract," and for convenience will be so designated hereafter. In 1922 Hogan commenced this action to recover possession of lots 2 and 3. The complaint follows the form usually employed in an action in ejectment.

In his answer Thrasher admits his possession of lots 2 and 3, the demand made by plaintiff, and his refusal to surrender

possession, and otherwise denies all the allegations of the complaint. The answer then sets forth several affirmative defenses, including laches and estoppel, *in pais*, and also a cross-complaint in which Thrasher alleges that in 1908 he and his wife on the one part, and Hogan on the other, entered into a parol agreement that Thrasher and wife would convey the irregular tract in section 36 to Hogan, and in exchange therefor Hogan would convey to Thrasher lots 2 and 3, the deeds to be exchanged as soon as the parties acquired title. The specific performance of that contract is demanded. In reply Hogan pleaded as an estoppel the decree in a cause numbered 517. The trial of the present action was had to the court without a jury and resulted in a decree for the specific performance of the parol agreement, and from that decree plaintiff prosecuted this appeal.

1. In support of their contention that the cross-complaint [1] does not state facts sufficient to constitute a cause of action for the specific performance of the contract pleaded, counsel for plaintiff say: "It fails to allege fraud under the doctrine of this court so frequently announced, which finds expression and elucidation in the case of *Juby* v. *Craddock*, 56 Mont. 557, 559, [185 Pac. 771.]"

Fraud which is said to be the foundation of the doctrine of part performance of a parol agreement sufficient to take the case out of the operation of the statute of frauds does not mean actual fraud in the sense of conscious deceit, but rather in the sense, familiar to courts of equity, of unjust or unconscionable conduct which works a detriment for which courts of law are unable to afford an adequate remedy. In *Gallagher* v. *Gallagher*, 31 W. Va. 9, 5 S. E. 297, the court said: "The fraud, which will entitle the purchaser to a specific performance, is that which consists in setting up the statute against the performance after the purchaser has been induced to make expenditures, or a change of situation in regard to the subject matter of the agreement upon the supposition that it was to be carried into execution, and the assumption of rights thereby

[72 Mont. 318.]

to be acquired; so that the refusal to complete the execution of the agreement is not merely a denial of rights which it was intended to confer, but the infliction of an unjust and unconscientious injury and loss. In such case the vendor is held by force of his acts or silent acquiescence, which have misled the purchaser to his harm, to be estopped from setting up the statute of frauds.''

This explanation of the doctrine has been accepted in numerous cases, many of which will be found cited in the notes to 36 Cyc. 644.

The cross-complaint herein does set forth the facts necessary to constitute fraud in the sense that the term is used in a case of this character.

*Juby* v. *Craddock* was an action to foreclose a mortgage in which the defendants attempted but failed to plead fraud as a defense. The language employed by the court was appropriate enough to the facts there presented, but the decision does not have any particular application to the case before us. The essential averments of a complaint for specific performance will be found stated in 20 Ency. Pl. & Pr. 434, in 36 Cyc. 773, and 25 R. C. L. 330.

Again, it is insisted that the cross-complaint discloses that [2–4] defendant was guilty of laches, and this is predicated upon the fact that it does appear that defendant completed his title to the irregular tract in 1919 and that he did not demand an exchange of deeds until 1922. The agreement pleaded presents the case of an exchange, or, in common parlance, a trade of land for land, in which each party occupies the dual role of vendor and vendee. But so far as the relief here sought is concerned, defendant occupies the position of vendee, and his cross-complaint discloses that he has been in possession of lots 2 and 3 continuously since the agreement is alleged to have been made in 1908, and that the first intimation he had that plaintiff would not perform was in 1922. In *Wright* v. *Brooks*, 47 Mont. 99, 130 Pac. 968, this court disposed of the contention now made, adversely to plaintiff. It was there said: ''Moreover,

the weight of authority is that the vendee in possession cannot be barred from specific performance by mere delay, however long, because his possession is a continued assertion of his claim. He may rest in security until his title or right of possession is attacked."

Hogan does not pretend that he was injured in any degree by the delay or that he was induced thereby to alter his position to his prejudice. In *Brundy* v. *Canby*, 50 Mont. 454, 148 Pac. 315, this court said: "Laches may arise from an unexplained delay short of the period fixed by the statute of limitations, still laches will not be presumed from such a delay alone. (*Wright* v. *Brooks*, 47 Mont. 99, 108, 130 Pac. 968.) It must be made to appear affirmatively that unusual circumstances exist which on account of such delay render the proceeding inequitable; else relief cannot be denied on this ground."

In *Hall* v. *Hall*, 70 Mont. 460, 226 Pac. 469, we said: "Mere delay of itself is not laches, but to constitute laches the delay must have worked injury to another." (Citing Pomeroy's Equity Jurisprudence, 4th ed., sec. 1442.)

In *Wolf* v. *Great Falls, W. P. & T. Co.,* 15 Mont. 49, 38 Pac. 115, the plaintiff vendee had been ousted from possession more than three years before he instituted the suit for specific performance, and that fact was declared to be the determining consideration in the conclusion reached by the majority of the court. The doctrine of that case cannot be applied to the facts presented by the cross-complaint before us. We think the pleading is not open to the attacks made upon it.

2. It is urged that the evidence is insufficient to sustain the findings made by the trial court. Those findings—thirty-three in number—cover twenty-seven pages of the printed record and only the briefest reference to them may be made.

In effect, the court found that ever since 1902 plaintiff has had the irregular tract inclosed with lands owned by him lying immediately to the north; that the fence between the irregular tract and other lands owned by the defendant in the south half of section 36 has been maintained at all times by plaintiff

and defendant, one-half thereof by each; that, by reason of its location and topography, the irregular tract can be farmed more conveniently and advantageously with plaintiff's lands lying immediately north, than with the other lands of defendant; that plaintiff has been in possession of the irregular tract continuously since 1902, farming the same and taking the crops therefrom every year and appropriating them to his own use; that in 1902 defendant went into possession of lots 2 and 3 and inclosed them by fences with lands then held by him in section 36; that lots 2 and 3 can be farmed more conveniently and advantageously with the lands owned by defendant than with any other lands; that ever since 1908 defendant has been in possession of lots 2 and 3, cultivating the farming land thereon and removing the crops therefrom every year and appropriating them to his own use without let or hindrance, and with the knowledge and acquiescence of the plaintiff; that in 1908 plaintiff sought out defendant and opened negotiations which culminated in a parol agreement to the effect that plaintiff would purchase lots 2 and 3 from the railway company and would hold the legal title in trust for the use and benefit of defendant until the defendant obtained title to the school lands in section 36 then covered by his contracts, at which time plaintiff would convey lots 2 and 3 to defendant, and, in exchange therefor, defendant and his wife would convey the irregular tract to plaintiff; that, pursuant to the agreement, plaintiff secured title to lots 2 and 3 from the railway company, and defendant and his wife secured patents for the school lands, the last patent being secured in December, 1919; that the irregular tract comprises 37.25 acres and, at the time the parol agreement was made, it was all good farming land under irrigation; that lots 2 and 3 comprise 74.19 acres, of which amount fifteen acres are worthless, being covered by mine tailings, twenty acres lie on a hillside and cannot be irrigated and are valuable only for grazing purposes, and that there are less than forty acres of farming land; that ever since 1908 the defendant has improved, developed, and in-

creased the productivity and value of lots 2 and 3, under the belief that he would receive the title for them in accordance with the terms of the parol agreement, expending thereon more than $2,000 in time, labor and money; that by reason of the improvements made by him, lots 2 and 3 were, at the time this action was commenced, many times greater in value than they were when the parol agreement was made, and, unless the performance of that agreement is enforced, defendant will suffer great loss which cannot be adequately compensated in damages; that defendant and his wife have executed a sufficient deed conveying the legal title to the irregular tract to plaintiff, and have deposited the deed with the clerk of the court, to be delivered to plaintiff whenever title to lots 2 and 3 is conveyed to defendant by plaintiff or by decree of the court; that plaintiff never asserted any right to lots 2 and 3 or to the possession thereof from 1909 until August, 1922, but on the contrary during all of that period of time "stood idly by without objection to the defendant's use and possession of said lands and premises, until he had seen said lands and premises increase many times in value by reason of the industry and work of the defendant herein"; that plaintiff has never paid nor offered to pay to defendant anything for or on account of the improvements so made; that because of his possession of lots 2 and 3 in 1908 defendant had a preference right to purchase them and would have purchased them from the railway company but for the agreement made with the plaintiff; that he believed in plaintiff's statements, relied upon his promise, and thereby was induced to forego purchasing the lots himself, and, in reliance upon plaintiff's promise and not otherwise, he expended large sums of money and much time and labor in making permanent improvements upon the lots, all of which will be lost to him if plaintiff were permitted to prevail; that, at the time the parol agreement was made, the value of the irregular tract was equal, at least, to the value of lots 2 and 3.

From the findings the court concluded that plaintiff has been guilty of laches; that he should be estopped by his conduct to assert any right to the possession of lots 2 and 3; that the parol agreement is a fair and equitable contract and should be specifically enforced.

The statement of even a bare summary of the evidence would extend this opinion to an unreasonable length and would not accomplish any useful purpose. Whether the parties ever entered into the parol agreement is the principal question in dispute, and upon that subject the utmost for which plaintiff can contend is that the evidence is in sharp conflict. Practically all of the surrounding circumstances lend color to defendant's story and tend to corroborate his testimony. There were some occurrences developed at the trial which at first blush seem to militate against defendant's position, but they were subject to explanation, were explained, and apparently the [5] explanation satisfied the trial court. Our examination of the record leads us to believe that every finding is supported by the evidence; but, in any event, the findings which relate to the making of the parol agreement, the circumstances under which it was made, and the conduct of the parties thereafter toward the subject matter of the agreement, find ample support in the evidence, and these findings alone would justify the decree under the rule announced in *Re Williams' Estate,* 52 Mont. 192, Ann. Cas. 1917E, 126, 156 Pac. 1087, and in *Babcock* v. *Engel,* 58 Mont. 597, 194 Pac. 137.

3. It is next contended that the parol agreement, if made, [6] was void under the statute of frauds. While it is true that the statute of frauds applicable to a sale of real property is equally applicable to a contract for the exchange of land for land (27 C. J. 205), it is not true that a parol agreement for the sale or exchange of real property may not be specifically enforced.

Section 7593, Revised Codes of 1921, provides: "No agreement for the sale of real property, or of any interest therein, is valid, unless the same, or some note or memorandum thereof,

be in writing, and subscribed by the party to be charged, or his agent, thereunto authorized, in writing; but this does not abridge the power of any court to compel the specific performance of any agreement for the sale of real property in case of part performance thereof.''

In 27 C. J. 343, the rule applicable under this statute is stated as follows: ''Where one party to an oral contract has, in reliance thereon, so far performed his part of the agreement that it would be perpetrating a fraud upon him to allow the other party to repudiate the contract and to set up the statute of frauds in justification thereof, equity will regard the case as being removed from the operation of the statute and will enforce the contract by decreeing specific performance of it, or by granting other appropriate relief.'' The rule has been applied so often by this court that only a few of the cases need be cited: *Cobban* v. *Hecklen,* 27 Mont. 245, 70 Pac. 805; *Finlen* v. *Heinze,* 32 Mont. 354, 80 Pac. 918; *Stevens* v. *Trafton,* 36 Mont. 520, 93 Pac. 810; *Wright* v. *Brooks,* above; *Milwaukee Land Co.* v. *Ruesink,* 50 Mont. 489, 148 Pac. 396.

While there is not any hard-and-fast rule for determining just what acts will constitute part performance sufficient to take a case out of the operation of the statute, the authorities are practically all agreed that ''if possession taken in pursuance of the contract is followed by the making of valuable improvements on the land by the vendee, there is a sufficient part performance.'' (36 Cyc. 654; 25 R. C. L. 264.)

It is urged, however, that, at the time the parol agreement [7] is alleged to have been made, Thrasher was in possession of lots 2 and 3 under a revocable license, and that his possession thereafter was held in subordination to Hogan's legal title, hence cannot be considered as evidence of part performance. We do not deem it material what term is selected to characterize Hogan's possession of the irregular tract or Thrasher's possession of lots 2 and 3 in 1908, if in fact the parol agreement was made at that time. It is the general rule that in order for possession by the vendee to constitute part performance of a

parol agreement to sell or exchange real property, such possession must be in pursuance of the agreement and not merely a continuance of a former possession. (*Lamme* v. *Dodson,* 4 Mont. 569, 9 Ann. Cas. 135, note, 2 Pac. 298.)   Whether it is the one or the other depends upon the facts of the particular case; but the authorities generally agree that by making valuable, substantial or permanent improvements upon the land, the vendee gives character to his possession and makes it referable to the new relation created by the contract. (*Phillips* v. *Jones,* 79 Ark. 100, 9 Ann. Cas. 131, 95 S. W. 164; Pomeroy on Contracts, ''Specific Performance,'' sec. 124; 36 Cyc. 664; 25 R. C. L. 264.)   In principle the same rule was applied in *Reece* v. *Roush,* 2 Mont. 586.

4. Again, it is contended that defendant's injury, if any, [8] can be compensated in damages.   Section 8717, Revised Codes, provides: ''It is to be presumed that the breach of an agreement to transfer real property cannot be adequately relieved by pecuniary compensation,'' *etc.*   The defendant's position is fortified by this presumption in the first instance, but, in addition thereto, the court found specifically on ample evidence that he could not be adequately compensated in money.

5. The further contention advanced by plaintiff that the [9] contract, if made, lacks mutuality cannot be sustained. Section 8716, Revised Codes, provides: ''Neither party to any obligation can be compelled specifically to perform it, unless the other party thereto has performed, or is compellable specifically to perform,'' *etc.*

In 5 Pomeroy's Equity Jurisprudence, fourth edition, section 2191, the author says: ''So far as there is a principle of mutuality, it is mutuality of remedy in equity at the time of filing the bill that is required, and not a mutuality in the terms of the contract when the contract is made.   Equity is entirely willing to grant plaintiff the performance he applies for, but if it finds that in doing so the defendant, without fault, is left in turn to a remedy at law only, it refuses to lend its aid to such an unequal result.   Therefore any original lack of mutuality

in the terms of the contract will have no influence if the court finds that giving the plaintiff his relief will no longer leave the defendant to the law for relief.''

Even if it be conceded that under the parol agreement Thrasher did not bind himself to procure title to the irregular tract within any specified time, that fact became wholly immaterial, for when he filed his cross-complaint, tendered a deed, and offered to do equity, the remedy became mutual. There was no room then for plaintiff to say that he could not enforce performance as against defendant, for there was then nothing left to be done by anyone but himself. (*Finlen* v. *Heinze,* above; 36 Cyc. 627, 718.)

6. Again, it is insisted that Thrasher was estopped by the [10] judgment in cause 517 to claim any interest in lots 2 and 3. Cause No. 517 was an action instituted by the Pioneer Placer Mining Company and Conrad Kohrs against Hogan, Thrasher and others, to have adjudicated the rights of the parties to the use of the waters of Gold Creek. In his answer in that cause Thrasher alleged that he was the owner of the school lands in section 36, including the irregular tract; and Hogan in his answer alleged that he was the owner of lots 2 and 3, and each claimed appropriations of water from Gold Creek. It is now insisted that the judgment entered in that action in 1915, adjudging that Hogan was then the owner, in possession, and entitled to the possession of lots 2 and 3, is conclusive against the claim now asserted by Thrasher. The estoppel was pleaded as new matter in plaintiff's reply, and every allegation thereof is deemed to have been denied. (Sec. 9178, Rev. Codes.) The burden was upon the plaintiff to prove the judgment relied upon (34 C. J. 1067), and this he failed to do; at least the record before us does not contain the judgment in cause 517. It does contain the complaint of the plaintiff, the separate answer of the defendant Thrasher, and the separate answer of the defendant Hogan. It also contains portions of the findings but the findings do not constitute the judgment and cannot be relied upon to sustain the

estoppel pleaded. (*Springer* v. *Bien,* 128 N. Y. 99, 27 N. E. 1076; *Magee* v. *Risley,* 82 Wash. 178, 143 Pac. 1088; 34 C. J. 888.)

In *Oklahoma City* v. *McMaster,* 196 U. S. 529, 49 L. Ed. 587, 25 Sup. Ct. Rep. 324 [see, also, Rose's U. S. Notes], the court said: "Without a judgment the plea of *res judicata* has no foundation; and neither the verdict of a jury nor the findings of a court, even though in a prior action, upon the precise point involved in a subsequent action and between the same parties, constitute a bar. In other words, the thing adjudged must be by a judgment. A verdict, or finding of the court alone, is not sufficient. The reason stated is, that the judgment is the bar and not the preliminary determination of the court or jury. It may be that the verdict was set aside, or the finding of facts amended, reconsidered, or themselves set aside or a new trial granted. The judgment alone is the foundation for the bar."

In passing we observe that, since Thrasher and Hogan were [11] codefendants in cause 517, the judgment in that action cannot be relied upon as *res judicata* in this one, unless they were adversary parties in that cause. (*Peters* v. *City of St. Louis,* 226 Mo. 62, 21 Ann. Cas. 1069, 125 S. W. 1134; *Gouwens* v. *Gouwens,* 222 Ill. 223, 113 Am. St. Rep. 395, 78 N. E. 597; 1 Freeman on Judgments, 4th ed., sec. 158; 1 Van Fleet's Former Adjudication, sec. 256; 15 R. C. L. 1013.) That they were not such adversaries, so far as the title or right of possession of lands then claimed by each is concerned, is apparent, and, furthermore, they were both represented by the same counsel, and it is inconceivable that a reputable attorney would represent, in the same action, two clients whose interests were essentially antagonistic.

7. The decree itself is attacked upon three grounds:

(a) It is said that it does not require defendant to perform [12] the parol agreement, but it was not necessary that it should do so in express terms. The court had found that defendant and his wife had executed deeds conveying the irregu-

lar tract to plaintiff and had deposited the deed in court, to
be delivered to plaintiff in exchange for a deed to lots 2 and 3.
The decree does provide, however, that plaintiff should convey
lots 2 and 3 "to the defendant by good and sufficient deed, and
receive in return the deeds deposited with the clerk of this
court," *etc.*

(b) The decree requires plaintiff to convey to defendant
[13] lots 2 and 3 "with the appurtenances." It is the con-
tention of plaintiff that he had acquired by appropriation
a valuable water right appurtenant to lots 2 and 3, and that,
in so far as the decree compels him to convey the appurte-
nances, it goes beyond the issues made by the pleadings and
sustained by the proof. It is true that, according to defend-
ant's testimony, the parol agreement related to the exchange of
lands and that nothing was said about the appurtenances;
but the inclusion of the words "with the appurtenances" did
not add anything to the decree and their omission would not
have affected the rights of the parties in the least.

It is the rule that appurtenances to land pass by a deed for
the land without being specially mentioned. (*Tucker* v. *Jones,*
8 Mont. 225, 19 Pac. 571; *Sweetland* v. *Olsen,* 11 Mont. 27, 27
Pac. 339; *Great Falls Water Works Co.* v. *Great Northern Ry.
Co.,* 21 Mont. 487, 54 Pac. 963.) In *Lensing* v. *Day & Hansen
Security Co.,* 67 Mont. 362, 215 Pac. 999, this court said: "A
water right, acquired by appropriation and used for a bene-
ficial and necessary purpose in connection with a given tract
of land, is an appurtenance thereto, and as such passes with
the conveyance of the land, unless expressly reserved from the
grant."

(c) Complaint is made that the decree requires "that the
plaintiff and his wife shall convey" lots 2 and 3, whereas
plaintiff's wife, if he has one, is not a party to the action.
This criticism is justified. There is not anything in the plead-
ings, evidence, or findings to suggest that plaintiff is, or at any
time mentioned in the record was, a married man. The in-

clusion of the words "and his wife" is a mere inadvertence; but the correction should have been sought in the trial court.

The cause is remanded to the district court, with direction to modify the decree by striking therefrom the words "and his wife," where they appear in paragraph 2, and, as thus modified, the decree will stand affirmed. Defendant will recover his costs on appeal.

*Modified and affirmed.*

MR. JUSTICE CALLAWAY and ASSOCIATE JUSTICES STARK and MATTHEWS concur.

MR. JUSTICE GALEN, being absent on account of illness, did not hear the argument and takes no part in the foregoing decision.